## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**CURTIS E. BLACKWELL, II,**

                    Plaintiff,

vs.

**LOU ANNA K. SIMON,** in her individual
capacity as president of Michigan State
University**, MARK DANTONIO,** in his
individual capacity as Head Football Coach of
Michigan State University**, MARK HOLLIS,**
in his individual capacity as Director of
Intercollegiate Athletics for Michigan State
University,  **CHAD DAVIS,** Detective, in his
individual capacity as a detective for the
Michigan State University Police Department,
and **SAM MILLER,** Detective, in his
individual capacity as a detective for the
Michigan State University Police Department,

                  Defendants.

Case No. 1:18-cv-01261

HON. JANET T. NEFF

Magistrate Judge Sally J. Berens

**BRIEF IN SUPPORT OF DEFENDANT DAVIS AND MILLER'S MOTION FOR SANCTIONS**

---

**Thomas R. Warnicke (P47148)**
LAW OFFICES OF THOMAS R. WARNICKE
PLLC
Attorneys for Plaintiff
16291 West 14 Mile Road, Suite 21
Beverly Hills, MI  48025-3327
(248) 930-4411
tom@warnickelaw.com

**Andrew A. Paterson, Jr. (P18690)**
PATERSON LAW OFFICE
Attorneys for Plaintiff
2893 East Eisenhower Pkwy
Ann Arbor, MI  48108-3220
(248) 568-9712
aap43@outlook.com

**Thomas G. Kienbaum (P15945)**
**William Bruce Forrest, III (P60311)**
KIENBAUM HARDY VIVIANO PELTON
& FORREST PLC
Attorneys for Defendants Simon, Dantonio
   and Hollis
280 North Old Woodward Avenue, Suite
400
Birmingham, MI  48009
(248) 645-0000
tkienbaum@khvpf.com
wforrest@khvpf.com

**Bruce W. Neckers (P18198)**
**Paul A. McCarthy (P47212)**
RHOADES McKEE PC
Attorneys for Defendants Chad Davis and
   Sam Miller
55 Campau Avenue, NW, Suite 300
Grand Rapids, MI  49503
(616) 235-3500
bneckers@rhoadesmckee.com
mccarthy@rhoadesmckee.com

## INTRODUCTION

Defendants Chad Davis and Sam Miller are being **personally sued** by Plaintiff for $5+ million in damages. Defendants Davis and Miller's discovery efforts have routinely been blocked, frustrated, and obstructed by Plaintiff and his lawyers. Enough is enough. Prior efforts by this Court to sanction misconduct, including what one would believe to be a severe sanction in the form of $10,000, were clearly insufficient. Nonetheless, Plaintiff's bad faith and vexatious conduct persists. Discovery, previously extended by the Court, is going to close in seven days, on February 28, 2020. Plaintiff's misconduct, and that of his lawyers, should not be condoned by an extension of discovery and the imposition of another monetary sanction. Rather, the established pattern of misconduct should be met with this Court's exercise of its inherent power to sanction misconduct by dismissing Plaintiff's case.

Given word count limitations, Defendants Davis and Miller adopt by reference the content of their response to Plaintiff's motion for protective order as to the Rule 30(b)(6) depositions of SMSB Foundation and SMSB Enterprise, ECF 193, and Defendant Davis and Miller's response to Michelle Franklin's motion for protective order, ECF 209. Those briefs delineate additional obstructionist behavior and misconduct by Plaintiff and his counsel that further underscore the appropriateness of the sanction of dismissal.

## FACTUAL BACKGROUND

### I.  PLAINTIFF'S INTERFERENCE WITH DEFENDANT DAVIS AND MILLER'S DISCOVERY EFFORTS

#### A.  PLAINTIFF INTERFERED WITH BANK SUBPOENAS BY DIRECTING BANKS NOT TO PROVIDE RESPONSIVE DOCUMENTS

At his August 12, 2019 deposition, Plaintiff identified the banks where he opened accounts for Sound Mind Sound Body Foundation ("SMSB Foundation") and SMSB Enterprise ("SMSB

Enterprise").[1] Accordingly, following Plaintiff's deposition undersigned counsel issued subpoenas to obtain bank records, which are relevant to Plaintiff's $5 million lost wages claim. Plaintiff interfered with the subpoenas, however, by having his counsel send letters to each bank objecting to the subpoena, indicating that a motion would be filed with the court, and directing that responsive documents **not** be produced until further order of the Court. These letters were sent by Mr. Warnicke to Flagstar Bank (See **Exhibit 1**), JP Morgan Chase (See **Exhibit 2**), and Comerica Bank (see **Exhibit 3**). Plaintiff, however, did **not** file any motion. After objecting to the subpoenas and directing the third parties to not answer, **Plaintiff did nothing**.

### B.   PLAINTIFF SIMILARLY INTERFERED WITH A SUBPOENA FOR RECORDS ISSUED TO THE LIFTING AS WE CLIMB FOUNDATION

On August 15, 2019, following Plaintiff's deposition, undersigned counsel issued a subpoena to the Lifting As We Climb Foundation ("LAWCF"), the Washington, D.C. non-profit founded by Mr. Blackwell and his friend Siraaj Hasan in 2004. That subpoena sought documents relating to payments or financial transfers from LAWCF to Plaintiff, SMSB Foundation, and SMSB Enterprise.

Defendants attempted to serve LAWCF's resident agent, Siraaj Hasan, with that subpoena by certified mail on August 15, 2019, also sending a copy to Mr. Blackwell's counsel.[2] Mr. Hasan, however, failed to sign for the certified letter. A second subpoena, with a compliance date of

---

[1]   The background regarding SMSB Foundation and SMSB Enterprise was detailed in Defendant Davis and Miller's brief [ECF 193] in opposition to Plaintiff's motion for protective order.

[2]   It is notable that Defendants Davis and Miller provided notice to counsel for all parties of every subpoena issued in this case, as required by Fed. R. Civ. P. 45(a)(4). Counsel for Plaintiff, however, issued a battery of subpoenas in this case to third parties **but did not provide the subpoenas to counsel for Defendants Davis and Miller**. Similarly, Plaintiff issued discovery in this case to the MSU Defendants and did not provide copies of the issued discovery to counsel for Defendants Davis and Miller.

September 12, 2019, was issued to LAWCF on August 22, 2019, and this time Defendants' counsel arranged for personal service on Siraaj Hasan. Again, Mr. Blackwell's counsel was provided a copy of the subpoena.

On August 22, 2019, however, Plaintiff's counsel, Thomas Warnicke, sent a letter to LAWCF's Siraaj Hasan. See, **Exhibit 4**. Like Mr. Warnicke's letter to banks, he similarly directed that no documents should be produced by LAWCF. The body of Mr. Warnicke's August 22, 2019 letter to Mr. Hasan/Lifting As We Climb Foundation is imaged below:

August 22, 2019

**Via Certified Mail**
The Lifting As We Climb Foundation, Inc.
Siraaj Hasan, President & Co-Founder
1104 42nd Street NE
Washington DC 20019

*Re:*    *Blackwell v. Lou Anna K. Simon, et al., Case No. 18-cv-01261*

Dear Mr. Hasan:

The letter shall serve to inform you that the Law Offices of Thomas R. Warnicke, PLLC serves as legal counsel for Plaintiff Curtis E. Blackwell, II in the above referenced case. We are contacting you in response to the Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action that were sent to you dated August 15, 2019 and August 22, 2019 from Paul A. McCarthy and the Rhoades McKee Law Firm. This letter will serve as formal notice that Mr. Blackwell, through my firm, objects to The Lifting As We Climb Foundation sending any of his records relating to any of his accounts with, including but not limited to, Sound Body Sound Mind Enterprise, LLC, Sound Body Sound Mind Foundation, any of his personal accounts and any responsive records requested on Attachment A to the Lifting As We Climb Foundation Subpoena. Please take notice that we intend to file a Motion to Quash Subpoenas with the Court and therefore object to your producing any responsive documents until the court rules on Plaintiff's Motion to Quash. If you have any questions, please contact me promptly.

Very Truly Yours,

*LAW OFFICES OF THOMAS R. WARNICKE, PLLC*

*/s/ Thomas R. Warnicke*

And just as Plaintiff failed to take action by filing a motion to actually take issue with the subpoenas issued to banks, Plaintiff similarly failed to do so with respect to LAWCF. Plaintiff simply demanded that documents not be produced and then Plaintiff did nothing.

### C.   DEFENDANTS' SIGNIFICANT EFFORTS TO FORCE COMPLIANCE ON LIFTING AS WE CLIMB IN WASHINGTON DC

The LAWCF subpoena was personally served on Mr. Hasan on September 17, 2019. On September 25, 2019, Defense counsel sent a letter to Mr. Hasan confirming an extension of the Subpoena's compliance date to October 2, 2019. However, that extended compliance date came and went without any production or response from LAWCF or Mr. Hasan. The subpoena was ignored.[3] Defendants filed a Motion to Compel. Mr. Hasan continued to ignore the subpoena. The Court issued its Order to Compel. Mr. Hasan continued to ignore the subpoena and the Court's Order. Presently the D.C. Court is presiding over contempt proceedings.

### II.   PLAINTIFF'S OBSTRUCTION AS TO SMSB FOUNDATION AND SMSB ENTERPRISE

### A.   PLAINTIFF IGNORES THE SMSB FOUNDATION AND SMSB ENTERPRISE DOCUMENT SUBPOENAS

This factual background is further detailed in Defendant Davis/Miller's response to Plaintiff's motion for protective order, ECF 193. In short, Plaintiff is the resident agent for SMSB Foundation and SMSB Enterprise. Plaintiff refused to sign for certified mail copies of document subpoenas in July of 2019. In August, Plaintiff's counsel ignored a request to accept service of

---

[3]    Given the obstruction of discovery by Plaintiff and his counsel in this case, it is difficult to not suspect that Plaintiff Blackwell and/or his counsel encouraged Mr. Hasan to ignore the LAWCF subpoena, believing that Defendants Davis and Miller would not take action to enforce the subpoena because doing so required significant efforts in another jurisdiction.

SMSB Foundation and SMSB Enterprise document subpoenas. Cooperation would not be forthcoming.

With discovery closing at the end of February, on January 10, 2020, Plaintiff – and both of his lawyers – were served with document subpoenas as the resident agent of SMSB Foundation and SMSB Enterprise.[4] The subpoenas required responsive documents to be produced by January 27. See, **Exhibit 5**, **Exhibit 6**.

The January 27 document production deadline came and went. Plaintiff produced nothing. Plaintiff did not serve an objection. Plaintiff did not file a motion. He just thumbed his nose at the document subpoenas and ignored them, thus causing SMSB Foundation and SMSB Enterprise to be in contempt under Rule 45(g).

**B. PLAINTIFF FRUSTRATES THE RULE 30(B)(6) SUBPOENAS AND DEPOSITION NOTICES FOR SMSB FOUNDATION AND SMSB ENTERPRISE**

On January 21, 202, Plaintiff – and both of his lawyers – were served with Rule 30(b)(6) deposition notices for SMSB Foundation and SMSB Enterprise.[5] Again, Plaintiff was served as resident agent for each organization. On January 30, 2020, Plaintiff filed a motion for protective order as to the Rule 30(b)(6) deposition subpoenas, which motion is herculean in its number and breadth of misrepresentations.

---

[4]   The document subpoenas were served on Plaintiff personally and copies provided to Plaintiff's counsel at the January 10, 2020 deposition of Mark Dantonio.

[5]   Like the document subpoenas, the Rule 30(b)(6) deposition notices/subpoenas were issued and served by counsel for Defendants Davis and Miller. Plaintiff mischaracterizes this fact – repeating the misstatement 8 times in his motion for protective order – by falsely claiming that the subpoenas were issued by the MSU Defendants.

**C.     PLAINTIFF "DOUBLES DOWN" IN RESPONSE TO THE COURT'S FEBRUARY 10, 2020 SHOW CAUSE ORDER**

In his response to the Court's February 10, 2020 (show cause) Order, Plaintiff effectively "doubles down" on his frivolous motion for protective order. Lost on Plaintiff – nary a mention is made in his submission – is the fact that Plaintiff's extraneous allegations against Defendant Dantonio have nothing in the world to do with whether Defendants Davis and Miller were entitled to Rule 30(b)(6) depositions of SMSB Foundation and SMSB Enterprise in light of Plaintiff's lost wage claim and Plaintiff's admitted diversion of funds from SMSB Enterprise to himself personally.

Rather, Plaintiff repeatedly misrepresented the background, falsely claiming that the deposition notices/subpoenas **were issued by** the MSU Defendants "**because** the MSU Defendants have been the subject of numerous negative stories that have revealed that the MSU Defendants may have lied to the general public regarding certain public controversies surrounding Defendant Dantonio and the MSU Football program." ECF 173, Page ID 1902. Plaintiff contorted this background to contrive a reason to then inject more impertinent matter into the Court's record so that the media would pick it up and run with it. And they did and they are – repeatedly.

What on Earth does Plaintiff's claim of "certain public controversies" by the MSU Defendants have to do with whether Defendants Davis and Miller – being sued by Plaintiff for more than $5 million in lost wages – were entitled to depose a corporate representative of SMSB Foundation and SMSB Enterprise? Nothing. Zero. It is a complete non sequitur. Plaintiff's "doubling down" on this absurd position in response to the Court's show cause Order only makes plain Plaintiff's bad faith conduct and positions.

### III.   PLAINTIFF'S  OBSTRUCTION  OF  THE  MICHELLE  FRANKLIN DEPOSITION

As detailed in Defendant Davis and Miller's response to Michelle Franklin's motion for protective order (ECF 209), Ms. Franklin violated the document subpoena by failing to produce any documentation by the February 4, 2020 due date. On February 9, 2020, Plaintiff's counsel, now purporting to represent Ms. Franklin, blocked and frustrated her February 10, 2020 deposition through a meritless motion for protective order. Plaintiff clearly and unequivocally testified that Ms. Franklin handles the finance and accounting books (specifically Quick Books) for SMSB Foundation and SMSB Enterprises and that she maintains the financial records and invoices justifying expenses for the entities. Plaintiff's counsel blindly ignores all of this testimony.

### IV.   PLAINTIFF'S  PRIOR  SANCTIONS  AND  THE  COURT'S "CASTIGATION" OF COUNSEL WAS INEFFECTIVE

This Court imposed a $10,000 sanction against Plaintiff's counsel Andrew Paterson at the October 15, 2019 hearing on Defendant Davis' Motion to Strike and for Sanctions, which was heard on an emergency basis. At that hearing, Plaintiff's counsel proclaimed, promising "to be a thousand percent forthright,"[6] that attorney Paterson's filing of the Chad Davis deposition transcript into the public record in violation of an express stipulation not to do so was "inadvertent."[7] Plaintiffs represented to the Court that it was "inadvertent" because the stipulation "was something he wasn't aware of"[8] and, counsel further reasoned, attorney Paterson wasn't

---

[6]   October 15,2019 transcript, ECF No. 88, Page ID 1113 (p. 5). One wonders why counsel would have to assure the Court that he is being truthful in his representations to the Court, much less 1,000% truthful. Truthfulness is the baseline under the Rules of Professional Conduct.

[7]   October 15,2019 transcript, ECF No. 88, Page ID 1116, 1119 (p. 8, 11).

[8]   October 15,2019 transcript, ECF No. 88, Page ID 1119 (p. 11).

aware of it because "[h]e wasn't there when we put the stipulation on the record"[9] **at the Sam Miller deposition**. This minced meat explanation was counsel's effort to mislead the Court and avoid the admitted fact that attorney Paterson **was in attendance** when the same stipulation reached at the Miller deposition the day before was placed on the record at the Chad Davis deposition the next day, September 24, 2019.[10]

Accordingly, there was absolutely no basis for Plaintiff's counsel to claim that their filing the Davis deposition into the public record was "inadvertent." It was purposeful and done in bad faith. Counsel for Defendant Davis endeavored to demonstrate to Judge Carmody that the filing was in bad faith through a series of emails presented to the Court at the October 15, 2019 hearing, which further revealed attorney Paterson's ever-shifting positions as to the Davis deposition and its improper filing into the public record.[11] Judge Carmody, however, did not want to dwell into whether the action by Plaintiff's counsel was in bad faith, having already ruled that she would impose a $10,000 sanction but would not dismiss the case.[12]

Counsel for Defendant Davis tried to further reveal that attorney Paterson's action of filing the Davis deposition was intentional and in bad faith, but the Court stopped short of making a finding of bad faith, indicating that a $10,000 sanction award was a significant sanction:

---

[9]   October 15,2019 transcript, ECF No. 88, Page ID 1113 (p. 5).

[10]   McCarthy: "So we just want to confirm that the same agreement that we reached with respect to Mr. Miller at the conclusion of his deposition applies to Detective Davis in his deposition; namely, that no reference or public use of the police investigation will be, will be made. That will be the agreement." Chad Davis 9.24.19 deposition, p. 204.

[11]   These emails are attached as **Exhibit 7**.

[12]   October 15,2019 transcript, ECF No. 88, Page ID 1125 (p. 17). Judge Carmody did ask what might be Mr. Paterson's motive to publish the Chad Davis deposition and counsel for Defendant Davis explained what the intervening months now make manifestly obvious to the Court: **media attention**. Specifically, Plaintiff "wants to turn this into a sideshow about Auston Robertson on a sexual misconduct situation that occurred months after, and he wants to turn this into a media story about Mark Dantonio." ECF No. 88, Page ID 1124 (p. 16).

MCCARTHY:      So Mr. Paterson can't slide away from the fact that he was there by his own admission, listened to the very agreement, has no excuse, none, zero, to stand before this Court and through a proxy, Mr. Warnicke, try telling you to excuse him from that by saying, well, he wasn't at the Miller deposition. That's completely and utterly misleading. Has absolutely no bearing on the fact that he was there, frankly, at both of them, but by his own admission at the Davis deposition and the same agreement is confirmed. It's inexcusable. There is no excuse for this.

THE COURT:      Well, I would – I find it inexcusable and that's why I'm going to fine them $10,000, and that's probably – I could count on one hand in 19 years the times I have granted sanctions.[13]

It is believed that the Court fashioned its ruling presumably under the rational belief that a $10,000 sanction was severe and would bring to a swift end any misconduct by Plaintiff or his counsel. Judge Carmody eluded to this viewpoint in her comments:

THE COURT      Yes. I think that is appropriate. But the other thing – and I would like to say the most meaningful thing in my opinion I have done is castigate Plaintiff's Counsel. And to me that would be – well, maybe I am putting too much importance on myself, but to me that would be the biggest sanction that they have had. **And if you have anymore motions before me, before the end of discovery, which you probably may or may not, I will certainly remember this**.[14]

Regrettably, the sanction imposed by the Court was insufficient. Defendants Davis and Miller again move for sanctions and again ask for the sanction of dismissal.

## V.   PLAINTIFF'S   ESTABLISHED   PATTERN   OF   DISCOVERY MISCONDUCT

Plaintiff, aided by his lawyers, has amassed a substantial resume of discovery misconduct, including but not limited to:

---

[13]   October 15,2019 transcript, ECF No. 88, Page ID 1132 (p. 24).

[14]   October 15,2019 transcript, ECF No. 88, Page ID 1133 (p. 25)(emphasis added).

1.      Plaintiff, through his counsel, violated the parties' stipulated on-the-record agreement that information, testimony, and documentation regarding the MSU police investigation into the January 17, 2017 sexual assault would not be made public by filing Detective Miller's entire deposition transcript into the record days later.

2.      Plaintiff's counsel attempted to mislead the Court at the October 15, 2019 hearing by claiming that attorney Paterson filed the Davis deposition by "mistake" or through "inadvertence." Counsel's misdirection – that attorney Patterson did not know of the stipulation because he was not in attendance when it was made at the **Sam Miller** deposition – constitutes bad faith perpetrated on the Court.

3.      Plaintiff's establish pattern and history of utilizing discovery in this case, and these court proceedings, for an improper purpose, namely media attention on extraneous matters having nothing to do with the issues in this case.

4.      Plaintiff failed to disclose and quantify damages in his initial disclosures as required by Rule 26(a)(1)(A).

5.      Plaintiff failed to articulate his damages in response to MSU Defendants' discovery that specifically addressed Plaintiff's damages.

6.      Only in response to a Motion to Compel by MSU Defendants did Plaintiff finally supplement his discovery and claimed between $4.65 and $5.58 million in economic damages.

7.      Plaintiff interfered with Defendants Davis and Miller's discovery by sending letters directing a host of third parties to not produce records, yet Plaintiff took no action with the Court.

8.      Plaintiff failed to provide notice to Defendants of subpoenas issued by Plaintiffs, as required by Fed. R. Civ. P. 45(a)(4) to third parties.

9.   Plaintiff failed to provide notice to Defendants of discovery issued to the MSU Defendants.

10.   Plaintiff ignored Defendants Davis and Miller's interrogatories. Plaintiff did nothing.

11.   Plaintiff only answered Defendants' interrogatories after the Court ordered Plaintiff to do so at the November 21, 2019 hearing.

12.   Plaintiff, as the manager of SMSB Foundation, ignored the subpoena for records that were due January 27, 2020. SMSB Foundation produced nothing and is in contempt under Rule 45.

13.   Plaintiff, as the sole member/owner of SMSB Enterprise, ignored the subpoena for records that were due January 27, 2020. SMSB Enterprise produced nothing and is in contempt under Rule 45.

14.   Plaintiff filed a meritless and frivolous motion for protective order to avoid the Rule 30(b)(6) deposition of SMSB Foundation and SMSB Enterprise.

15.   Plaintiff and his counsel, now purporting to serve as counsel for Michelle Franklin, caused Ms. Franklin to violate the document subpoena issued to her, resulting in contempt under Rule 45.

16.   Plaintiff and his counsel, now purporting to serve as counsel for Michelle Franklin, filed a meritless and frivolous motion for protective order, and refused to produce Michelle Franklin for deposition on February 10, 2020.

17.   Discovery will close on February 28, 2020. It will close with Plaintiff having taken extraordinary measures to block, prevent, and frustrate discovery of the Defendants. Plaintiff's actions, and those of his lawyers, come at a price and are deserving of the sanction of dismissal.

## LEGAL ARGUMENT

**I.    THE COURT HAS INHERENT AUTHORITY TO SANCTION MISCONDUCT, INCLUDING DISMISSAL OF PLAINTIFF'S CLAIMS**

The United States Supreme Court has recognized, and the Sixth Circuit has repeatedly followed and affirmed, that the federal district courts have inherent authority to sanction misconduct by a litigant or its counsel:

> [I]t is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for [t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991) (internal citations omitted); see also, *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (district court has "inherent power to sanction when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) (a district court "has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders."); *Jones v. Bergh*, 2011 WL 5180569, *2 (W.D. Mich., Oct. 31, 2011) (memorandum and order) ("this Court has the inherent authority to impose sanctions and dismiss this civil action based on the plaintiff's bad faith, fraudulent conduct, and abuse of the judicial process"); *Carmack v. City of Detroit*, 2019 WL 4670363 (E.D. Mich., Sept. 25, 2019) (slip copy) (district court has inherent authority to sanction a party acting in bad faith).

The law is likewise clear that the actions of a privately retained attorney are imputed to the client. See *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97 (1993) (recognizing that in various contexts "clients must be held accountable for the acts and omissions of their attorney"); *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) (holding that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of

13

his counsel's unexcused conduct imposes an unjust penalty on the client"); *AMCO Builders & Developers, Inc. v. Team Ace Joint Venture*, 469 Mich. 90, 104; 666 NW2d 623 (2003) (Young, J. concurring), quoting *Prate v. Freedman*, 483 F.2d 42, 48 (CA 2, 1978) ("In our legal system, an attorney is his client's agent and representative…. Like any other principal, a client may be bound by the acts of his agent, acting within the scope of his authority.").

As the Supreme Court noted in *Chambers*, the authority includes the discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." 501 U.S. at 44-45 (1991). "[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); see also, *Taylor v Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir. 1988) (permitting "the use of dismissals as a sanction for failing to comply with discovery orders because it accomplishes the dual purposes of punishing the offending party and deterring similar misconduct by future litigants."); *Plastech Holding Corp. v. WM Greentech Automotive Corporation*, 257 F.Supp.3d 867, 878 (E.D. Mich. 2017) ("[s]anctions for violations of the judicial process serve not only to remedy prejudice to a party and reprimand the offender, but also to deter future parties from trampling upon the integrity of the court."). Therefore, the Court's inherent authority to sanction misconduct necessarily includes the power to issue the ultimate sanction – dismissal. See, *Reid v. Prentice-Hall, Inc.*, 261 F.2d 700 (6th Cir. 1958) ("The court has inherent power to punish abuse of its process by dismissal of an action in the interest of orderly administration of justice"); *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 233 (6th Cir. 1983) (dismissal pursuant to court's inherent power appropriate in cases involving "contumacious conduct" or other "flagrant

14

abuses"); *Smith v. C.I.R.*, 926 F.2d 1470 (6th Cir. 1991) ("It is well established that courts have inherent power to dismiss and/or enter a default when a party disobeys a court order or otherwise interferes with the efficient administration of justice"); *Mitan v. International Fidelity Ins. Co.*, 23 Fed. Appx. 292, 2001 WL 1216978 (6th Cir. 2001) (affirming trial court's dismissal of action under inherent authority to sanction misconduct based on plaintiff's "history of forum shopping and abusing the legal process"); See also, *Jones v. Bergh*, 2011 WL 5180569, \*2 (W.D. Mich., Oct. 31, 2011) (Memorandum and Order).

## II.     POWER TO SANCTION UNDER RULE 37

The Court also has authority to sanction Plaintiff under Rule 37.  The sanctions available under Fed. R. Civ. P. 37(b)92)(A)(i)-(vii) are available against Plaintiff for his cumulative failure to 1) comply with Rule 26(a)(1) by detailing his damages; 2) answer the MSU Defendant's discovery, which required a motion to compel to force compliance; and 3) answer Defendant Davis and Miller's interrogatories, forcing the issue to a motion hearing and only responding after the Court granted the motion at the November 21, 2019 hearing.

Given that Plaintiff is the resident agent of SMSB Foundation and SMSB Enterprise, and given that he owns and manages these entities, Plaintiff and Plaintiff alone determined whether SMSB Foundation and SMSB Enterprise would comply with the document subpoenas that were properly served on Plaintiff on January 10, 2020. While Plaintiff's noncompliance leaves the entities subject to contempt under Rule 47(g), Plaintiff, as the sole person who prompted the entities' noncompliance/contempt, should be held accountable under Rule 37(d) and, thus, the sanction power under Rule 37 should be available to the Court.

The same should be true for Plaintiff interfering and preventing the Rule 30(b)(6) depositions of SMSB Foundation and SMSB Enterprise to proceed through his filing of a meritless and bad faith motion for protective order. Likewise for Plaintiff, whose lawyers now serve as

counsel for Ms. Franklin, similarly thwarted her deposition through the meritless motion for protective order. Under these circumstances, the Court should be able to deploy the sanction power contained in Rule 37.

Here, the four factor test outlined in *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995) supports the sanction of dismissal. First, Plaintiff's pervasive obstruction of discovery is both conscious and intentional. Second, Defendants have been severely prejudiced. Discovery closes in a week and Plaintiff has blocked and frustrated legitimate and fundamentally important discovery into his $5+ million lost wage claim. Plaintiff's misconduct should not be rewarded with another extension, but rather, by the dismissal of his claims. Third, Plaintiff and his counsel have clearly been warned that failure to cooperate could lead to dismissal. Defendants Davis and Miller earlier sought dismissal as a sanction and Judge Carmody expressly told Plaintiff that she would remember the misconduct that led to the $10,000 sanction award. Fourth, lesser sanctions have been imposed – specifically sanctions of $10,000 and $1,000 – and such awards have proven ineffective. The futility of the prior sanction awards, particularly a severe sanction of $10,000, makes clear that more significant sanctions should be imposed.

**CONCLUSION**

Fairness and justice require, under the circumstances, that the Court should impose the ultimate sanction of dismissal.

Respectfully submitted,

Dated:  February 21, 2020                    RHOADES McKEE PC


By:*/s/ Paul A. McCarthy*
     Bruce W. Neckers (P18198)
     Paul A. McCarthy (P47212)
     Attorneys for Defendants Davis and Miller

16
