UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CURTIS E. BLACKWELL, II,

     Plaintiff,

v.                                           Hon. Janet T. Neff

LOU ANNA K. SIMON, et al.,               Case No. 1:18-cv-1261

     Defendants.

_____/

## **REPORT AND RECOMMENDATION; ORDER; REFERRAL**

The following motions have been referred to the undersigned, with response(s) as noted:

1.     Plaintiff Blackwell moved to compel the completion of Defendant Mark Dantonio's deposition and for sanctions (ECF No. 165); Defendants Mark Dantonio, Mark Hollis, and Lou Anna K. Simon (the MSU Defendants) filed a response (ECF No. 178).

2.     The MSU Defendants moved for a protective order related to Plaintiff's request to continue Defendant Dantonio's deposition (ECF No. 167); Plaintiff filed a response (ECF Nos. 183, 184).

3.     Plaintiff Blackwell moved for a protective order (regarding the deposition of the Sound Mind Sound Body Entities) (ECF No. 173); Defendants Chad Davis and Sam Miller (the Detective Defendants) filed a response (ECF No. 193).

4.     The MSU Defendants moved to strike ECF No. 173 (Plaintiff Blackwell's motion for protective order) and for sanctions (ECF No. 180); the Detective Defendants filed a response/joinder (ECF No. 195); Plaintiff filed a response (ECF Nos. 196, 198, 199, 223); and the MSU Defendants filed a response with leave of court (ECF No. 207).

5.     Non-party Michelle Franklin moved for a protective order (ECF No. 188); the Detective Defendants filed a response (ECF No. 209).

6.     The Detective Defendants moved for sanctions (ECF No. 211); Plaintiff filed a response (ECF No. 224).

7.     The MSU Defendants submitted an emergency motion to submit additional evidence in connection with its prior motion for sanctions in ECF No. 180 (ECF No. 229).

For the reasons set out below, the undersigned recommends the Court grant ECF No. 180 and order the following sanctions: that (1) the case be dismissed as to Plaintiff's claim against the MSU Defendants; and (2) Plaintiff's counsel (Attorneys Andrew A. Paterson, Jr., and Thomas Warnicke) be removed from the case as counsel. These sanctions require a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See, e.g., Builders Insulation of Tennessee, LLC v. S. Energy Sols.*, 2020 WL 265297, at *5 (W.D. Tenn. Jan. 17, 2020).

The decisions on the other motions follow the Report and Recommendation. The Court orders Defendants' counsel to submit affidavits supporting their requests for attorneys' fees and costs as set out below within 14 days. Plaintiff may object within 14 days of the filing of those affidavits.

Finally, the Court orders that Attorney Paterson be referred to Chief U.S. District Judge Robert J. Jonker for determination of whether he should be disciplined pursuant to Local General Rule 2.3(d).

If, after consideration of this report and recommendation, the Court orders that any of Plaintiff's claims should go forward, the undersigned recommends a further status conference to determine whether discovery should remain open as to any issue covered by these motions.

## REPORT AND RECOMMENDATION

In this case, Plaintiff Curtis Blackwell, represented by Attorneys Paterson and Warnicke, has alleged only one cause of action against the MSU Defendants: that they violated his Fifth Amendment rights by declining to renew Plaintiff's employment agreement in retaliation for his exercise of his right to remain silent and to decline to be questioned by the Michigan State University Police Department or investigators MSU hired from Jones Day. (ECF No. 1 at PageID.14-15.) As to the Detective Defendants, Plaintiff also alleges one cause of action: that the

two detectives did not have probable cause to arrest him on February 8, 2017, but did so in violation of his Fourth Amendment rights.  (*Id.* at PageID.12-14.)

Plaintiff's counsel have not fulfilled their duty of candor to the Court.  Mich. R. Prof. Conduct 3.3.  Regarding Plaintiff's January 30, 2020 motion for a protective order (ECF No. 173), the Court finds that Plaintiff willfully misled the Court and did not, prior to the Court's inquiry at the March 6, 2020 hearing, attempt to correct the record.  (PageID.1899-906.)  Likewise, in his January 20, 2020 motion to compel (ECF No. 165), Plaintiff's counsel made misleading statements in order to argue that Plaintiff was deprived of a full seven-hour deposition of Defendant Dantonio.  (PageID.1775.)  Finally, in the motion Attorney Paterson filed on behalf of Nonparty Michelle Franklin (ECF No. 188), he took a position directly contrary to Plaintiff Blackwell's sworn deposition testimony and submitted an affidavit from Ms. Franklin that is directly contradicted by Plaintiff Blackwell's testimony and the documentary record.  (PageID.2247-54.)  This was done without an inquiry into the matter reasonable under the circumstances.

Moreover, instead of using the discovery process to gather evidence to support the two claims alleged in this case, Plaintiff Blackwell's attorneys have repeatedly misused court process to elicit information unrelated to his case and then have publicly filed that information, at least once in violation of a court order.  It appears from counsel's conduct and statements at the March 6, 2020 hearing that Plaintiff's counsel have used discovery, not to adduce support for the narrow claim Plaintiff alleges against the MSU Defendants in this case, but to harass the defendants and to build a case they have now filed in state court (and which the Court denied leave to file here).  As to the MSU Defendants, this case appears to have been prosecuted for an improper purpose and should be dismissed.  As to the Detective Defendants, substantial sanctions, including monetary sanctions and the removal of Plaintiff's counsel, are justified.

### Factual Background

Plaintiff's attorneys' inappropriate conduct has marred the history of this case.

Plaintiff's complaint, filed on November 12, 2018, alleged that "Plaintiff's exercise of his Fifth Amendment Right to decline interrogation by the MSU Police Department defendants as well as the Jones Day lawyers, was a significant, if not the sole, motivating factor in Defendant Simon's Dantonio's and Hollis' decision not to renew Plaintiff's Employment Agreement."  (ECF No. 1, PageID.14.)

On March 28, 2019, this Court denied Plaintiff's motion to amend his complaint (ECF No. 25) to add Michigan State University as a defendant and two new state-law claims.  (ECF No. 31.) In that Memorandum Opinion and Order, the Court noted that "the tenor and content of Plaintiff's proposed First Amended Complaint would subject the pleading to being stricken pursuant to Fed. R. Civ. P. 12(f)."  (PageID.304.)

On October 9, 2019, Judge Carmody sanctioned Attorney Paterson, ordering that he pay $10,000 to Defendant Chad Davis because Attorney Paterson had publicly filed the sealed transcript of Defendant Davis's deposition.  (ECF No. 87.)  Plaintiff did not appeal that order.

At a hearing on November 21, 2019, the Court granted the Detective Defendants' motion to compel Plaintiff to respond to interrogatories, and invited an affidavit supporting attorneys' fees and costs.[1]  (ECF Nos. 65, 133.)  Plaintiff had not responded to Defendants' interrogatories, responded to the motion to compel, or meaningfully defended his failure at the hearing on the issue.  In so doing, his counsel violated Local Rule 7.1, when they refused to concur prior to the filing of the motion.

---

[1] The Detective Defendants' counsel never submitted that affidavit, and no fees and costs were awarded.  (ECF No. 150, PageID.1633.)

On November 4, 2019, Plaintiff Blackwell filed a motion to unseal a portion of Mark Hollis's deposition.  (ECF No. 116.)  In his brief, and apparently undeterred by Judge Carmody's $10,000 sanction for his previous disregard for the sealing process, Plaintiff characterized the contents of a sealed deposition transcript in salacious terms.  Specifically, he argued that the deposition transcript be unsealed because:

> The answers Defendant Hollis provided with respect to nonparty Auston Robertson's recruitment and admission into MSU are vital information the general public needs to know considering Defendant Dantonio has made multiple public statements about the admission and subsequent dismissal of nonparty Auston Robertson from MSU.  The general public has the right to know the "real" truth surrounding Defendant Dantonio's involvement in the recruitment and admission of nonparty Auston Robertson into MSU.  **Defendant Hollis' sealed deposition testimony provides that truth!**

(PageID.1402 (emphasis in original).)  As noted during the hearing, litigants cannot use the Court's mandatory process to harass another party on issues irrelevant to the litigation, and Plaintiff provided no basis to deem information related to Auston Robertson relevant to Plaintiff's claim that his contract was not renewed after he asserted his right under the Fifth Amendment not to speak to investigators.  (ECF No. 155 at PageID.1710-13.)  *See, e.g., Seattle Times v. Rhinehart*, 467 U.S. 20, 34-35 (1984).  The Court also warned Plaintiff that characterizing a sealed document in a public record after a court has ordered it sealed subjected him to possible sanction for contempt.  If Judge Carmody's sealing order had been made on the record, the Court would have ordered sanctions.  (*Id.* at PageID.1713-14.)

During the hearing on December 10, 2019, the Court warned Plaintiff's counsel that, if monetary sanctions were insufficient to halt the abuse of the discovery process, the next step would be counsel's removal from the case or dismissal with prejudice.  (ECF No. 155, PageID.1714.)

On January 20, 2020, Plaintiff Blackwell moved to compel the completion of Defendant Dantonio's deposition and for sanctions.  (ECF No. 165, PageID.1773.)  In that motion, which

5

Plaintiff's attorney Thomas Warnicke filed, Plaintiff Blackwell argued that, because *the Court* had set the deposition to begin at 10:00 a.m., and because the deposition had been ended when the Gerald R. Ford Federal Building had closed at 5:30 p.m., he had had insufficient time to depose Defendant Dantonio and should be allowed an additional one hour and five minutes for the deposition.  (PageID.1775.)  At no point did Plaintiff acknowledge that his deposition notice set the 10:00 a.m. start time, and the Court's administrative order merely reflected that request.  (ECF No. 226, PageID.2715.)  To the contrary, he suggested, inaccurately, that the deposition was impeded because the Court required that the deposition be set on a day that would not allow for a full seven hours of questioning.  (ECF No. 165, PageID.1775; ECF No. 183, PageID.2196; ECF No. 233, PageID.2893.)  At the hearing, he argued that only defense counsel ever communicated with the Court (ECF No. 233, PageID.2893), but Plaintiff's counsel was included on the emails with the Court.

Also on January 20, 2020, the MSU Defendants moved for a protective order to prevent Plaintiff from taking Defendant Dantonio's deposition for a second day.  (ECF No. 167, PageID.1784.)  On February 3, 2020, Plaintiff Blackwell filed a response to that motion.  (ECF No. 183, PageID.2195.)  In that response, Plaintiff initially argued based on the Federal Rules of Civil Procedure that he was entitled to depose Defendant Dantonio further, although he focused more on arguing that Defendant Dantonio had improperly refused to appear for a second day of questioning than on the relevant inquiry: whether Plaintiff could show an appropriate basis for additional deposition time and that there was a "circumstance" that "impeded…the examination." Fed. R. Civ. P. 30(d)(1).  (PageID.2198-201.)  Plaintiff's brief then devolved, however, in Section B, into salacious allegations that Defendant Dantonio's deposition testimony revealed NCAA violations and that Defendant Dantonio "may have committed perjury by providing untruthful

answers to questions pertaining to the use of Plaintiff in the recruitment of star student-athletes for the MSU football program."[2]  (PageID.2202-06.)  Plaintiff dedicated a section to arguing that this was relevant because it demonstrated that "Defendant Dantonio does not want to answer additional questions out of fear."  (PageID.2202 (initial caps omitted).)  Predictably, a flurry of press reports followed.

> On January 30, 2020, Plaintiff Blackwell filed a motion for a protective order, arguing that
>
> MSU Defendants are attempting to annoy and harass Plaintiff by subjecting Plaintiff to **two (2) additional** unauthorized depositions in which MSU Defendants are attempting to ask Plaintiff **irrelevant** questions pertaining to the Sound Mind Sound Body Foundation and Sound Mind Sound Body, Enterprises, LLC…which Plaintiff has previously answered during his nearly 7-hour deposition taken on August 12, 2019….
>
> Plaintiff sat for a nearly 7-hour deposition at the law offices of the MSU Defendants in which Plaintiff was **asked and subsequently answered a litany of irrelevant questions pertaining to Sound Mind Sound Body**.

(ECF No. 173, PageID.1900-01 (emphasis in original).)  Plaintiff further argued that the depositions and accompanying document subpoenas "are only intended to annoy, harass and embarrass Plaintiff because the MSU Defendants have been the subject of numerous negative stories that have revealed that the MSU Defendants may have lied to the general public regarding certain public controversies surrounding Defendant Dantonio and the MSU Football program."  (PageID.1902.)  Plaintiff further stated, "[i]t is important to inform the Court that Defendant Dantonio's sworn deposition testimony may have revealed major NCAA violations that were committed by Defendant Dantonio and MSU.  Additionally, it is also important to inform the Court that Defendant Dantonio may have committed perjury during his deposition."  (PageID.1902 n.2.)

---

[2] The Court had previously held that this subject matter was not relevant to the Fifth Amendment claim.  (ECF No. 160 at PageID.1733-34.)

Although the motion attached the subpoenas, at no point in that motion did Plaintiff inform the Court that these were actually requests for Rule 30(b)(6) depositions, not depositions of Plaintiff Blackwell.  (ECF No. 173-1, PageID.1908-13.)  Nor did Plaintiff inform the Court that the MSU Defendants did not notice the depositions; Defendants Davis and Miller did.  (*Id.*)  Given these misstatements, the undersigned can only conclude that Plaintiff made them as cover for his headline-grabbing allegations that Defendant Dantonio committed NCAA violations, which have nothing to do with Plaintiff's claim that he was terminated for exercising his Fifth Amendment right not to incriminate himself.[3]

The Detective Defendants point out these inaccuracies in their response, including that the attorney for the Detective Defendants personally served the subpoenas, which bear his signature and included a check written from his firm's bank account.  (ECF No. 193, PageID.2265.)  The Detective Defendants also argue that the discovery directed to the SMSB Entities was relevant to mitigation of Plaintiff's $5 million lost wages claim.  (*Id.* at PageID.2266, 2275.)  Defendants note that Plaintiff acknowledged that he used "SMSB Enterprise funds to pay his personal bills, including his home utility bills, his car loan, auto insurance, gasoline charges, his credit cards, and his daughter's private school tuition."  (PageID.2270 (citing Plaintiff's deposition at 52-53).)  They also argue, based on an accounting firm's review of tax returns and bank records, that Plaintiff may have received other income through the SMSB Entities.  (PageID.2270-73.)  At the March 6, 2020 hearing, Plaintiff's counsel conceded that Plaintiff is seeking lost wages from the Detective Defendants.  (ECF No. 233, PageID.2890.)

---

[3] While perjury might be relevant to impeachment of Defendant Dantonio at trial, it had no relevance to a motion for protective order as to discovery other defendants propounded.

On February 3, 2020, the MSU Defendants filed a motion to strike Plaintiff Blackwell's motion for a protective order and for sanctions (ECF No. 173), arguing that Plaintiff's motion misrepresented to the Court who propounded the discovery Plaintiff sought to quash and what that discovery requested and noting that it appeared to have been aimed at Defendant Dantonio primarily to allege misconduct, rather than as a basis for quashing the Rule 30(b)(6) subpoenas. (ECF No. 180, PageID.2145-46.)  The MSU defendants also filed a response to Plaintiff's motion to compel the completion of Defendant Dantonio's deposition.  (ECF No. 178, PageID.2113.)

On February 7, 2020, this Court ordered Plaintiff to pay the MSU Defendants $1000 in costs because Plaintiff declined to agree to a proposed order that accurately reflected the Court's December 10, 2019 ruling, thereby requiring Defendants to file a motion.  As the Court noted, "[t]he language that Plaintiff's counsel attempted to excise from the order was related to the primary contested issue in that hearing on that motion.  It is dubious that counsel did not recall that portion of the Court's ruling or misunderstood it."  (ECF No. 187, PageID.2245.)  The Court noted that an award of fees and costs was warranted because Plaintiff "refused to agree to an order that accurately reflected the Court's ruling on a basis that the Court had explicitly rejected.  That amounts to bad faith."  (PageID.2246.)

Two days later, on February 9, 2020, Attorney Paterson filed a motion for a protective order on behalf of a third party, Michelle Franklin.  (ECF No. 188, PageID.2247.)  In that motion, Attorney Paterson accused the Detective Defendants of serving subpoenas to a deposition and for documents on Ms. Franklin "intended only to harass, annoy and intimidate" her.  (PageID.2248.) Attorney Paterson represented that Franklin was not a bookkeeper for Sound Mind Sound Body, but only a "volunteer that did not have any personal or first-hand knowledge with any claims or defenses asserted in this case, including Plaintiff's claims for damages."  (PageID.2250.)  With the

motion, Attorney Paterson submitted an affidavit from Ms. Franklin, stating that she was not the bookkeeper for Sound Mind Sound Body Foundation or Enterprises and only served as a "volunteer" where she "assisted with the summer camps and did minimal data input" and had no "first-hand and/or personal knowledge regarding the finances of Sound Mind Sound Body Foundation or Enterprises." (ECF No. 192, PageID.2262.)

In response, the Detective Defendants noted that Plaintiff Blackwell's deposition testimony directly contradicted Ms. Franklin's assertions (and Attorney Paterson's representations to the Court in filing the motion). (ECF No. 209-4, PageID.2570-72.) Plaintiff Blackwell had testified that Ms. Franklin was on the board of the SMSB Foundation, that she did the Quickbooks for the organization, that she had been paid for that work from time to time, and that she had access to the bank accounts of both SMSB entities. (*Id.*) Plaintiff Blackwell further testified that he provided Ms. Franklin invoices and that she was the repository for those records. (*Id.* at PageID.2572.) He also noted that she spoke "a lot throughout the year" with the accounting firm that handled the SMSB entities' tax preparation. (*Id.*) The Detective Defendants also provided copies of three checks written to Ms. Franklin from Sound Mind Sound Body Enterprise accounts for a total of $6500. (ECF No. 209, PageID.2538.) The memo lines for those checks said, "SMSB," "SMSB ADMIN – 4 Months Jan-April," and "SMSB Admin." (*Id.*)

On February 10, 2020, this Court ordered Plaintiff to show cause why he and his counsel should not be sanctioned based on Rule 11 and the Court's inherent power to sanction, including removal of both counsel of record and dismissal. (ECF No. 191, PageID.2261.)

On February 18, 2020, Plaintiff filed a response to the Court's order to show cause and Defendants' motion to strike and for sanctions. (ECF No. 196, PageID.2365.) In that filing, which both of Plaintiff's counsel signed, Plaintiff argued that his statements regarding alleged NCAA

violations were relevant to Plaintiff's claims because they were relevant to the MSU Defendants' decision not to renew his contract.  More specifically, he suggested that they were somehow relevant to the "conflicting and inconsistent reasons" the MSU Defendants had given for that decision.  (PageID.2367-68.)  Plaintiff further argued that Rule 11 and inherent power sanctions were not appropriate because the Plaintiff's allegations were "**meritorious and not libelous**" and "factual!"  (PageID.2375-77 (emphasis in original).)  Plaintiff then argued that the assertions regarding NCAA violations were relevant to his claim of termination for invoking his Fifth Amendment rights because they were "a matter that Plaintiff was directly asked to be involved in by Dantonio as a condition of his employment."  (PageID.2377.)

On February 21, 2020, Detective Defendants filed a motion for sanctions, arguing that Plaintiff's counsel inappropriately interfered with third party subpoenas and otherwise demonstrated a pattern and practice of obstructing discovery that constituted abuse of the judicial process.  (ECF Nos. 211, 212.)  Among the Detective Defendants' allegations was that Attorney Warnicke had sent letters to each third party to which the Detective Defendants had directed third-party subpoenas stating that Plaintiff Blackwell objected to the production of documents and intended to move to quash, but never filed motions to quash any of those subpoenas.  (ECF No. 212, PageID.2587.)  The Detective Defendants also argued that Plaintiff's motions for a protective order as to the Rule 30(b)(6) depositions and Michelle Franklin discovery were further indicative of his obstructionist conduct.  (PageID.2590.)  The Detective Defendants also argued Plaintiff's only purpose for various filings was to "contrive a reason to then inject more impertinent matter into the Court's record so that the media would pick it up and run with it."  (PageID.2591.)  They argued for sanctions pursuant to the Court's inherent authority and Rule 37.  (PageID.2597-600.)

On March 3, 2020, Plaintiff filed his response.  (ECF No. 224, PageID.2704.)  Plaintiff argued that Plaintiff and his counsel had not violated any court orders, counsel's conduct was appropriate as part of civil discovery, there was no basis to revisit prior misconduct, and no conduct warranted the imposition of sanctions.  (PageID.2704-11.)  At the hearing on March 5, Attorney Warnicke admitted that it was his practice in his cases to send a letter to every recipient of a third-party subpoena objecting to production.  (ECF No. 233, PageID.2957.)  When pressed, he could not articulate a good faith basis for that practice other than a vague concern for personal privacy.  (PageID.2958-59.)  Nor did he identify a good faith basis for that particular objection in this instance, where the subpoenas were directed to third party entities unlikely to have the Plaintiff's personal information.  (PageID.2958-59.)

A hearing on all six motions and lasting approximately two and a half hours was held on March 5, 2020.  During that hearing, Attorney Warnicke noted that he intended to file a state court lawsuit bringing other claims related to Plaintiff's termination.  (PageID.2962.)

During the hearing, the Court pressed Plaintiff's counsel regarding the relevance of asserted NCAA violations to his Fifth Amendment claim.  Attorney Paterson provided a convoluted answer suggesting that Defendant Dantonio retaliated against Plaintiff Blackwell "for his refusal to talk about it, where he might have admitted exactly an NCAA violation." (PageID.2908.)  (This does not follow, given that NCAA violations are not violation of law.) Attorney Paterson also suggested that, because the MSU Defendants had asserted "philosophical differences" for terminating Plaintiff's contract, "[s]ome of those philosophical differences may or may not have had to do with NCAA violations that Mr. Blackwell was uncomfortable with." (PageID.2908.)  Plaintiff's counsel did not provide a satisfactory answer to the question of how testimony on that front aided his Fifth Amendment claim against the MSU Defendants.

(PageID.2908-11.)  At one point, Attorney Paterson argued that the MSU Defendants used Mr. Blackwell's "exercise of the Fifth Amendment as a basis for scapegoating him and terminating him and making him look like a guilty party."  (PageID.2949.)

The Court gave leave for Plaintiff's counsel to file a response to its Order to Show Cause why Plaintiff should not be sanctioned for the filing of Michelle Franklin's motion for a protective order, given its contradiction of Plaintiff's sworn testimony and counsel's failure to disclose that contradiction.  (ECF No. 233, PageID.2880.)  Plaintiff filed his response on March 9, 2020, arguing that the motion was not filed in bad faith and that Ms. Franklin's deposition should be limited to one hour.  (ECF No. 227, PageID.2721.)  Plaintiff also filed a second affidavit from Ms. Franklin. (ECF No. 227-1, PageID.2730.)

On March 10, 2020, Attorney Warnicke filed a state court action in Wayne County on behalf of Plaintiff Blackwell against the MSU Defendants and William Beekman, alleging breach of contract, violation of Michigan's Elliott-Larsen Civil Rights Act for race discrimination and wrongful termination, wrongful termination against public policy, and intentional infliction of emotional distress.  (ECF No. 229-2, PageID.2743-87.)  That filing included portions of deposition transcripts from this case as exhibits.  (*Id.* at PageID.2830-36.)

**Analysis**

Under Rule 11, when a lawyer presents a written pleading to the Court, "whether by signing, filing, submitting, or later advocating it," he certifies "that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," "it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

further investigation or discovery."  Fed. R. Civ. P. 11(b).  "Rule 11…imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).

Pursuant to 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

A district court may assess sanctions against parties "under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons…or when conduct is tantamount to bad faith."  *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers*, 501 U.S. at 45-47).  "The concept of 'bad faith' conduct does not refer to conduct that is merely negligent, but includes conduct that is either intentional or reckless."  *Webastro Thermo & Comfort North Am., Inc. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 939-40 (E.D. Mich. 2018). Likewise, a court "has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders."  *Youn v. Track, Inc*., 324 F.3d 409, 420 (6th Cir. 2003).  "[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings."  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002).

Even if there were available sanctions under statutes or various rules in the Federal Rules of Civil Procedure, the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation.  *Chambers*, 501 U.S. at 50; *see also First Bank of Marietta*, 307 F.3d at 511; *Metz*, 655 F.3d at 490-91 (district court can sanction attorney under its inherent authority, even though Rule 11 applied).  "That authority includes the ability to fashion an appropriate

sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers*, 501 U.S. at 44-45); *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) (affirming dismissal under inherent power to sanction based on plaintiff's history of forum shopping and abuse of the legal process); *cf. Lawrence v. Burdi*, 314 Mich. App. 203 (2016) (setting out Michigan cause of action for abuse of process).  In *Chambers v. Nasco, Inc.*, the Supreme Court affirmed the imposition of sanctions under Rule 11 and the district court's inherent power where a party had "filed false and frivolous pleadings," and "attempted, by other tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance."  501 U.S. at 41,

One permissible sanction is the assessment of attorneys' fees "to reimburse legal fees and costs incurred by the other side." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186.  However, the Supreme Court has held that the award of attorneys' fees and costs "must be compensatory rather than punitive in nature." *Id.*  In other words, that assessment must reflect, at least roughly, the fees expended by other litigants in responding to the sanctionable conduct. *Id.* at 1187.

A court has the authority to remove an attorney from a case pursuant to the court's inherent power to regulate the conduct of attorneys practicing before it. *See Chambers*, 501 U.S. at 43 (discussing a court's inherent power to conduct its affairs as including the power to control admission to the court's bar and to discipline attorneys who appear before it); *Lelsz v. Kavanagh*, 137 F.R.D. 646, 655-56 (N.D. Tex. 1991) ("There is no question that the Court possesses the authority to remove an attorney from a case pursuant to its inherent power to regulate the conduct of attorneys practicing before it."); *see also Drake v. Ham*, 2007 WL 2302575, at *4 (D.S.C. Aug. 9, 2007).  The Supreme Court has also noted that this power "ought to be exercised with great caution." *Chambers*, 501 U.S. at 43.

A court has the power to dismiss a lawsuit outright, whether as part of its inherent power or pursuant to Fed. R. Civ. P. 41(b), 37(b) and (c). *Chambers*, 501 U.S. at 44-45; *Kovacic v. Tyco Valves and Controls, LP*, 433 F. App'x 376, 380 (6th Cir. 2011). *Cf. Maldonado v. Ford Motor Co.*, 476 Mich. 372 (2006) (affirming dismissal of case where plaintiff repeatedly divulged information regarding defendant's expunged conviction in violation of court order). That is a particularly severe sanction, yet it is within the Court's discretion. The Sixth Circuit has noted that "[d]ismissal is generally imposed only for egregious misconduct," and "it would be inappropriate to dismiss without considering the severity of this sanction and the availability of lesser sanctions." *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988), *superseded by statute on other grounds as recognized in Bradley J. Delp Revocable Trust v. MSJMR 2008 Irrevocable Trust*, 665 F. App'x 514 (6th Cir. 2016). Nonetheless, "it is not an abuse of discretion to dismiss, even though other sanctions might be workable, if dismissal is supportable on the facts." *Id.*

The Sixth Circuit has set out the following "*Regional Refuse* factors" to consider in determining whether to dismiss a case as a sanction pursuant to the Court's inherent powers: (1) whether the party's conduct was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See Kovacic*, 433 F. App'x at 380; *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010) (citing *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)); *see also Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366–67 (6th Cir. 1997). Indeed, the Sixth Circuit has explained that "the factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's

inherent power are largely the same." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th

Cir. 1994); *Kovacic*, 433 F. App'x at 380.   And although "none of the factors is outcome

dispositive, a case is properly dismissed by the district court where there is a clear record of delay

or contumacious conduct."[4]   *Pharmacy Records*, 379 F. App'x at 524 (citing *Schafer*, 529 F.3d at

737).

> As to whether a party should suffer the consequence of dismissal as a result of his attorney's

misconduct, the Supreme Court has stated:

> There is certainly no merit to the contention that dismissal of petitioner's claim
> because of his counsel's unexcused conduct imposes an unjust penalty on the client.
> Petitioner voluntarily chose this attorney as his representative in the action, and he
> cannot now avoid the consequences of the acts or omissions of this freely selected
> agent.   Any other notion would be wholly inconsistent with our system of
> representative litigation, in which each party is deemed bound by the acts of his
> lawyer-agent and is considered to have "notice of all facts, notice of which can be
> charged upon the attorney."

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962).[5]   Nonetheless, the Sixth Circuit has been

reluctant to uphold the dismissal of a case merely to discipline the attorney where the plaintiff was

blameless, reasoning that that is a harsh sanction to mete out on a client for the ineptness of his

agent.   *Coleman*, 23 F.3d at 1094-95 (collecting cases).   Notably, these cases tend to occur in the

context of failure to prosecute.   *See, e.g., id.*; *Carter v. City of Memphis, Tennessee*, 636 F.2d 159,

161 (6th Cir. 1980); *Mulbah*, 261 F.3d at 591-92.   Nonetheless, where there is some other reason

---

[4] Contumacious conduct has been defined in various ways.   *Carpenter*, 723 F.3d at 704–05. One
is behavior that is "'perverse in resisting authority' and 'stubbornly disobedient.'"   *Schafer v. City
of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting Webster's Third New
International Dictionary 497 (1986)).   Another is conduct displaying "either an intent to thwart
judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings."
*Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001). It has also been defined as
"stubbornly disobedient and willfully contemptuous."   *Harmon*, 110 F.3d at 368.

[5] In rejecting the notion that dismissal was too harsh a penalty, the Supreme Court stated, "if an
attorney's conduct falls substantially below what is reasonable under the circumstances, the
client's remedy is against the attorney in a suit for malpractice."   *Link*, 370 U.S. at 634 n.10.

why dismissal does not do an injustice or the *Regional Refuse* factors all favor dismissal, courts have been more willing to dismiss a case as a sanction. *See, e.g., Bradley J. Delp Revocable Trust*, 665 F. App'x at 522; *Kovacic*, 433 F. App'x at 383. In affirming dismissal, the Sixth Circuit has emphasized that "[a] primary aspect" of the Court's discretion to use its inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Bradley J. Delp Revocable Trust*, 665 F. App'x at 520 (quoting *Chambers*, 501 U.S. at 44-45). This is particularly apt when the sanction attempts to curb "willful defiance of this Court's truth-finding function," or where "a sanction short of dismissal with prejudice would not protect the integrity of the legal system." *Id.* at 524 (quotation marks omitted); *see also Schafer*, 529 F.3d at 738. Moreover, the Supreme Court has held that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant" it, but also "to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

## A.  Conduct

### 1.     Plaintiff's Counsel Violated Rule 11 in Filing False and Misleading Briefs.

As an initial matter, Plaintiff contends that Rule 11 sanctions are unavailable because defendants failed to comply with the "safe harbor" procedures set out in Fed. R. Civ. P. 11(c)(2). However, the "safe harbor" process is inapplicable where the court on its own initiative, as here, enters an order describing the offending conduct and orders the offending attorney to show cause why Rule 11 has not been violated. *Ridder v. City of Springfield*, 109 F.3d 288, 297 n.8 (6th Cir. 1997).

### a.   Plaintiff's Motion for Protective Order regarding 30(b)(6) Depositions and Document Subpoenas (ECF No. 173)

Plaintiff's motion for a protective order misrepresented to the Court the nature of the discovery propounded and who propounded it.  In his response to the Order to Show Cause, Plaintiff Blackwell suggests that there was no reason for him to know that it was Defendants Davis and Miller who propounded the discovery, rather than the MSU Defendants.  (PageID.2369.)  He goes so far as to suggest that counsel for the MSU Defendants "could have advised Plaintiff's counsel that his clients were not the parties seeking additional discovery from the Plaintiff…."  (PageID.2369 n.2.)  However, the exhibits to his own motion make plain that it was Defendants Davis and Miller and not the MSU Defendants who served the discovery.  (ECF 173-1, PageID.1908-13; ECF No. 173-2, PageID.1914-17; *compare* ECF No. 173, PageID.1901.)  In addition, Attorney McCarthy, counsel for Defendants Davis and Miller, signed the subpoenas and personally served Mr. Blackwell and his counsel with both the document subpoenas and the deposition notices with cover letters on Rhoades McKee letterhead and checks for witness and mileage fees drawn from a Rhoades McKee bank account.  (ECF No. 193, PageID.2265; ECF No. 193-6, PageID.2327-2341; ECF No. 193-7, PageID.2343-49; ECF No. 193-8, PageID.2351-57; ECF No. 193-9, PageID.2360.)  Rhoades McKee represents the Detective Defendants.[6]  Moreover, Attorney McCarthy had previously sent correspondence regarding those subpoenas both to Plaintiff Blackwell directly (ECF No. 193-4, PageID.2311-20) and to counsel for Plaintiff Blackwell (Attorney Warnicke) (*id.* at PageID.2321-23).  Attorney McCarthy also emailed Attorney Warnicke regarding the subpoenas.  (ECF No. 193-5, PageID.2325.)  And it was Attorney McCarthy who responded to Attorney Paterson's email asking to meet and confer on the motion

---

[6] Plaintiff's counsel argued that they were confused because the depositions were noticed for the offices of the law firm that represents the MSU Defendants, but Rhoades McKee does not have an office in the Detroit area.

to quash and for a protective order. (ECF No. 196-3, PageID.2398-400.) Plaintiff's counsel's argument strains credulity.

Notably, Attorney McCarthy's January 24, 2020 email also points out that the subpoenas were to Sound Mind Sound Body Foundation and Sound Mind Sound Body Enterprise, a material fact Plaintiff Blackwell withheld from the Court in the motion he filed five days later. (ECF No. 196-3, PageID.2399-400; ECF No. 170, PageID.1810.) Plaintiff Blackwell's response to the Order to Show Cause makes no effort to correct or explain the misstatement that he (rather than a corporate representative pursuant to Rule 30(b)(6)) was subpoenaed for a deposition. (ECF No. 196.) Indeed, the motion's rather vitriolic argument is based entirely on that assertion. (ECF No. 173, PageID.1900-02.)

On this record, it is apparent that counsel for Plaintiff Blackwell were aware that (1) Defendants Davis and Miller, not the MSU Defendants, had propounded the discovery to which he objected, and (2) the subpoenas were to the Sound Mind Sound Body entities, not to Plaintiff Blackwell personally.

Even if, contrary to all appearances, Plaintiff somehow did not recognize the misstatements in ECF Nos. 170 and 173 before Defendants filed their response, Plaintiff has not withdrawn the motion. Attorney Warnicke claims he should not be sanctioned because he did not sign any of the motions filed in bad faith. However, as counsel of record, he has also not moved to withdraw them. Indeed, that seems to be Plaintiff's modus operandi in this case: Attorney Paterson signs the ethically problematic filings, and Attorney Warnicke and Plaintiff Blackwell avert their eyes

and reap the benefits.  Moreover, Attorney Warnicke signed the response to the order to show cause, which does nothing to correct the misstatements made to the Court.[7]  (ECF No. 196.)

### b. Plaintiff's Counsel Made No Reasonable Inquiry before Filing Non-Party Michelle Franklin's Motion for a Protective Order.

Plaintiff's counsel made no reasonable inquiry before filing Non-party Michelle Franklin's motion for a protective order.  Had Mr. Paterson done a reasonable inquiry, namely speaking to his own client or reviewing his client's deposition transcript, he would have discovered that the assertions that he made in the motion to quash were directly contrary to his client's sworn testimony and the documentary record.  Indeed, Attorney Paterson stated at the hearing that he had not been present for Plaintiff Blackwell's deposition, which took place in August of 2019,[8] and did not read it before filing a motion on behalf of Ms. Franklin.  (ECF No. 233, PageID.2872-79.)  This is curious because Attorney Paterson discussed Plaintiff Blackwell's deposition in his motion. (ECF No. 173, PageID.1900-01 (describing how "Plaintiff was asked and subsequently answered a litany of irrelevant questions pertaining to Sound Mind Sound Body").)  Attorney Paterson also stated that he did not review Ms. Franklin's affidavit with Plaintiff Blackwell before submitting it to the Court.  (ECF No. 233, PageID.2872-79.)  Although he proffers that Ms. Franklin's affidavit simply reflects what she told him, his inquiries to her were patently insufficient where his own client testified to the reverse.

Attorney Paterson now purports to represent Ms. Franklin, who directly contradicts Plaintiff Blackwell's sworn testimony.  Attorney Paterson suggests that this is simply a case where

---

[7] Rule 5.1(c)(1) of the Michigan Rules of Professional Conduct states that a lawyer shall be responsible for another lawyer's violations of the rules of professional conduct if "the lawyer orders or, with knowledge of the relevant facts and the specific conduct, ratifies the conduct involved."

[8] Attorney Paterson appeared on behalf of Plaintiff Blackwell on September 13, 2019.

two people remember things differently.  But when one of those people is already a client, it is unethical to represent the other party, too, where the representation is adverse to, or may be materially limited by, counsel's responsibility to the other client.  Mich. R. Prof. Conduct 1.7. These were not slight inconsistencies; their statements are diametrically opposed.  (ECF No. 233, PageID.2872-79.)

Ethical considerations aside, the filing of Ms. Franklin's motion for a protective order violated Rule 11 because Attorney Paterson failed to make a reasonable inquiry to determine whether its factual contentions had evidentiary support before filing it with the Court.  Fed. R. Civ. P. 11(b).  Had he even consulted with Plaintiff Blackwell, he would have discovered contrary testimony that would need to be disclosed to the Court as part of the motion, consistent with his duty of candor to the Court.  Plaintiff Blackwell's deposition testimony was unequivocal in identifying Ms. Franklin as the most appropriate witness to testify to the financial records of the Sound Mind Sound Body entities.  (ECF No. 209-4, PageID.2570-73.)  And those records are relevant to Plaintiff Blackwell's claim for lost wages, given his testimony that SMSB Enterprise funds paid numerous personal expenses for him.  (ECF No. 193-1, PageID.2299-303.)

### c.    Conclusion

Counsel for Plaintiff Blackwell violated Rule 11 by filing false and misleading papers with the Court, by failing promptly to correct those material misrepresentations, and by failing adequately to investigate the factual assertions in his filings.  That conduct is also sanctionable under the Court's inherent authority.  *Webastro Thermo & Comfort North Am., Inc.*, 323 F. Supp. 3d at 939-40.

2.     **Plaintiff's Counsel Used the Court's Mandatory Processes for Improper Purposes of Harassment in Bad Faith.**

Plaintiff's attorneys have engaged in a pattern of seeking discovery on issues unrelated to the claim against the MSU Defendants but that might be relevant to a different claim and that certainly appear to be of interest to the press and public.  The purpose of those inquiries appears to be twofold: (1) to harangue Defendants into exhausted compliance in the form of settlement, and (2) to gather discovery for a future claim (which has now been filed) in state court.  Both constitute abuse of the discovery process.  *See Chambers*, 501 U.S. at 41 (affirming sanctions where plaintiff devised "a plan of obstruction, delay, harassment, and expense sufficient to reduce [defendant] to a condition of exhausted compliance"); Fed. R. Civ. P. 26(b); *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (affirming sanction of lawyer pursuant to 28 U.S.C. § 1927 where he sought discovery to gather information for use in another case, noting that that conduct "unnecessarily multiplied the proceedings and fell short of his obligations as a member of the bar").

Under Federal Rule of Civil Procedure 26(b)(1), civil litigants are afforded broad pretrial discovery, *see Lewis v. ACB Bus. Servs., Inc*., 135 F.3d 389, 402 (6th Cir. 1998), which often results in "extensive intrusion into the affairs of both litigants and third parties," *Seattle Times*, 467 U.S. at 30.  Because of the potentially intrusive nature of discovery, "it is necessary for the trial court to have the authority to issue protective orders" or otherwise regulate the use and disclosure of information that "if publicly released could be damaging to reputation and privacy." *Id*. at 34–35.  As the Supreme Court has noted, "pretrial discovery by depositions and interrogatories has a significant potential for abuse."  *Id.*  The court "has a substantial interest in preventing this sort of abuse of its processes."  *Id.* at 35.

At the hearing on several discovery motions held on December 10, 2019, the Court found that Plaintiff had not made a showing that the recruitment of Auston Robertson or other MSU football players was relevant to Plaintiff's claim that his contract was not renewed because he exercised his Fifth Amendment right not to speak with investigators. (ECF No. 155, PageID.1709-10.)  In doing so, the Court noted that Attorney Paterson had filed a brief in which he included argument that appeared to be aimed at the press rather than the Court. (*Id.*, PageID.1710.)  The Court warned Plaintiff's counsel, "You don't get to use the mandatory processes of the court to dig for information that's unrelated to the litigation, much less to embarrass or harass another person." (*Id.*)  As the Court stated at that time, that appeared to be the purpose of the discovery Plaintiff had propounded. (*Id.*, PageID.1710, 1712-13.)  The Court further warned that continued use of the discovery process for an improper purpose would result in sanctions that included removal of counsel and dismissal. (*Id.*, PageID.1714.)  If Auston Robertson was close to the line, NCAA rules violation allegations were well over it.

On the face of ECF No. 173, it is designed as a vehicle to harass Defendant Dantonio and generate more media coverage for this case.  Defendant Dantonio did not propound the discovery to which Plaintiff Blackwell objected, but the motion was directed almost entirely to Defendant Dantonio.  The scandal-invoking statement in bold that "**as a result of Defendant Dantonio's sworn testimony in this case, MSU may now be subjected to major NCAA sanctions for their apparent NCAA violations**" (ECF No. 173, PageID.1906 (emphasis in original); *see also* PageID.1902 n.2), is remarkably similar to Plaintiff Blackwell's prior bolded statement that "[t]he general public has the right to know the 'real' truth surrounding Defendant Dantonio's involvement in the recruitment and admission of nonparty Auston Robertson into MSU. **Defendant Hollis' sealed deposition testimony provides that truth!**" (PageID.1402 (emphasis

in original).)  Neither allegation is relevant to the sole cause of action in Plaintiff Blackwell's complaint against the MSU Defendants, namely that he was fired for exercising his Fifth Amendment right not to speak to police or other investigators.

While Plaintiff Blackwell's allegation that Defendant Dantonio committed perjury might be relevant to impeach his testimony at trial, it has absolutely no relevance to a discovery motion asking for a protective order relieving the Sound Mind Sound Body entities from a subpoena to attend a deposition.  Indeed, the motion barely even tries to explain its relevance.  It merely argues that the subpoenas are "intended to annoy, harass and embarrass Plaintiff because the MSU Defendants have been the subject of numerous negative stories that the MSU Defendants may have lied to the general public regarding certain public controversies surrounding Defendant Dantonio and the MSU Football program."  (ECF No. 173, PageID.1902, 1906.)  This is, of course, a non sequitur without the false foundation that the MSU Defendants propounded the discovery Plaintiff Blackwell alleges is objectionable.

Plaintiff's argument that NCAA violations are relevant to his case is without foundation. Plaintiff argues that he is entitled to explore the "philosophical differences" and other explanations that Defendant Dantonio provided for the decision to terminate Plaintiff's contract.  (ECF No. 233, PageID.2908-09.)  That is undoubtedly true.  *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010) ("This court has held that an employer's shifting rationale can be evidence of pretext.").  But the MSU Defendants have never claimed that Plaintiff Blackwell was fired because he disagreed with Defendant Dantonio regarding NCAA violations or recruiting Auston Robertson.  Rather, Plaintiff Blackwell has constructed these alternate theories as salacious strawmen to knock down.  Indeed, counsel's argument regarding the relevance of the NCAA violations was incoherent, at one point suggesting that Plaintiff was terminated because he refused

to speak to Jones Day about NCAA violations (which was neither within the scope of the investigation nor a proper basis for the invocation of the Fifth Amendment).  (ECF No. 233, PageID.2910-11.)[9]   And adducing evidence of other bases for dismissal (which the MSU Defendants do not claim), such as the recruitment of Auston Robertson or an unwillingness to be party to NCAA violations, would be deleterious to Plaintiff's allegation that he was fired for asserting his Fifth Amendment rights.[10]

Plaintiff testified at his deposition that he was "blamed" for recruiting Auston Robertson. (ECF No. 180-6, PageID.2189.)  He testified, "I think the Auston Robertson thing blew up, I think they wanted to pin that on me in the recruiting department.  So if I was cast out, scapegoated and when everything came out with Auston Robertson in that investigation, that it would be part of the Curtis Blackwell era of recruiting and it wouldn't reflect poorly on Mark Dantonio, Mark Hollis, Lou Anna Simon, as Larry Nassar did.  So at that point, I felt like they just kind of let me go on, so that way they can kind of sweep it all out the front door."  (*Id.*, PageID.2188.)  "It became Curtis Blackwell's decision to bring Auston Robertson on campus, when we all know the head coach made the decision to bring him on.  He overrode everyone else in order to bring him on campus." (*Id.*)  Plaintiff testified that, because he was already suspended with pay, "it felt like that was part of the reason why it was easy to push me out."  (*Id.*, PageID.2188-89.)

The argument that Plaintiff was fired as the scapegoat for bad publicity related to sexual assaults by MSU football players is inconsistent with Plaintiff's only claim against the MSU

---

[9] When a public employer fires someone for invoking his Fifth Amendment privilege against self-incrimination, "that action may in some circumstances establish a cognizable constitutional claim." *Wood v. Summit Cty. Fiscal Office*, 377 F. App'x 512, 515 (6th Cir. 2010) (citing *Gardner v. Broderick*, 392 U.S. 273 (1968)).

[10] While the scope of discovery is broad, discovery has its limits, namely to matters that are "relevant . . . and proportional to the needs of the case, considering the importance of the issues at stake in the action."  Fed. R. Civ. P. 26(b)(1).

Defendants, but it is now precisely the claim that Plaintiff has filed in Wayne County.  (ECF No. 229-2, PageID.2743-87.)  That lawsuit claims that the termination of Plaintiff's contract occurred because (1) he is African-American, and (2) he refused to be complicit in the MSU Defendants' alleged violation of the law (specifically, Title IX) or policy (NCAA rules).  (*Id.*)  Although Plaintiff Blackwell incorporates a number of paragraphs of the federal complaint by reference (PageID.2759), in only two paragraphs of the 330-paragraph complaint does he reference the Fifth Amendment.  He claims that his invocation of his Fifth Amendment rights "greatly displeased MSU officials," and that they used that as an opportunity "to demonstrate their newfound (but insincere) alleged commitment to protecting the rights of sexual abuse victims."  (ECF No. 229-2, PageID.2760-61.)  This mirrors the federal complaint.  (ECF No. 1, PageID.9.)  But the thrust of the complaint is not that he was fired for invoking his Fifth Amendment rights, but rather he was fired as a public relations move because he refused to go along with other alleged misconduct and/or because he is African-American.  At the March 5 hearing, both of Plaintiff's counsel argued that Blackwell's invocation of the Fifth Amendment provided the MSU Defendants a way to "scapegoat" him for the recruiting of Auston Robertson; in other words, that his invocation of the Fifth Amendment gave them someone to "pin it on."  (ECF No. 233, PageID.2909-11, 2925.)

Contrary to Plaintiff's argument (ECF No. 233, PageID.2909-11, 2925), this is not an instance where Plaintiff is using discovery to inquire into purported reasons for dismissal in order to prove those were not the real reason, as would be expected in a wrongful termination case.  Rather, it is clear now that Plaintiff's counsel's forays outside the boundaries of relevant inquiry in this case were for the purpose of adducing evidence that could be used to file a separate lawsuit in state court—one that he believed would be on surer footing than the Fifth Amendment claim at issue here.  Indeed, Plaintiff Blackwell included portions of Defendant Dantonio's deposition

transcript as an exhibit to the state court complaint. (ECF No. 229-2, PageID.2833-36.) The Court warned counsel that misuse of the Court's mandatory discovery processes were inappropriate and sanctionable at the December 10, 2019 hearing.

The undersigned finds that, while this lawsuit may have been filed in good faith, after the denial of the motion to amend the complaint, Plaintiff maintained it for the purpose of adducing discovery to file a potentially stronger claim in another forum and as a vehicle to harangue the MSU Defendants into exhausted compliance in the form of settlement. That was an improper purpose. In addition, the invocation of NCAA violations bears no relevance to the Fifth Amendment claim. Counsel's insistence on inserting impertinent material into the case suggests they no longer have a good faith basis to pursue the actual claim alleged in this forum against the MSU Defendants. The inclusion of those allegations in various filings was done in bad faith and purely for the purpose of generating media interest—in other words, harassing and embarrassing the MSU Defendants. Plaintiff has prosecuted a claim in bad faith despite repeated warning, and the undersigned believes invocation of the Court's inherent power is necessary to curb that contumacious conduct. *See Scott v. Metropolitan Health Corp.*, 234 F. App'x 341, 368 (6th Cir. 2007) (affirming sanctions under inherent authority rather than only limited sanctions available under the Federal Rules where limited award "would not do justice to the magnitude of the offense").

**B. Sanction**

Having determined that Plaintiff's counsel violated Rule 11 and engaged in harassing conduct contrary to the Court's order, and that sanctions under that Rule and the Court's inherent authority are appropriate, the next question is what sanctions are required to guarantee the integrity of the Court and its proceedings.

28

### 1.      Dismissal of Action against the MSU Defendants with Prejudice

Defendants seek dismissal of Plaintiff's claims in their entirety as a sanction.   The undersigned recommends dismissal of the claim against the MSU Defendants with prejudice but does not recommend dismissal of the Fourth Amendment claim alleged against the Detective Defendants.   As noted above, dismissal is generally imposed only for egregious misconduct. Courts in the Sixth Circuit consider the *Regional Refuse* factors in determining whether to dismiss a case pursuant to Court's inherent powers.   *Bradley J. Delp Revocable Trust*, 665 F. App'x at 521.   Here, all four factors favor dismissal of the claim against the MSU Defendants.

First, the Court must consider whether the misconduct is due to willfulness, bad faith, or fault.   Here, Plaintiff's repeated violations of Rule 11 demonstrate willfulness and bad faith. Although Rule 11 does not require bad faith, Plaintiff's motion for a protective order that sought to mislead the Court regarding the Rule 30(b)(6) discovery propounded is sufficient to demonstrate it.   In addition, Plaintiff and his counsel were warned in a prior hearing that the injection of impertinent and salacious allegations into briefs would be cause for sanctions and were undeterred by that admonition.   Instead of limiting their briefing and discovery requests to those relevant to the claim and the particular motion at issue, they have repeatedly engaged in a misuse of the Court's processes to seek irrelevant discovery and to harass the MSU Defendants.   It is particularly noteworthy that those allegations regarding Defendant Dantonio's supposed perjury and NCAA violations were included even in a motion for a protective order against discovery that he did not propound.   And as stated above, while there might be some relevance to a claim that a defendant committed perjury come trial, there has been no showing of relevance whatsoever as to the NCAA violations.   Plaintiff's only reason for including them was to harass Defendant Dantonio.   And that is bad faith.

Second, the Court must consider whether the party's improper conduct prejudiced its adversary. Here, Plaintiff's conduct unquestionably served to unreasonably multiply proceedings, both in the form of additional discovery efforts and motion practice, as well as a second case filed in a separate forum, prejudicing the MSU Defendants.[11]

The third factor (whether the party was warned) also favors dismissal. At the December 10, 2019 hearing, the undersigned warned Plaintiff's counsel that inclusion of irrelevant and salacious allegations in briefs would result in sanctions, and if monetary sanctions were insufficient to halt the abuse of the discovery process, the next step would be counsel's removal from the case or dismissal with prejudice. (ECF No. 155, PageID.1714.) Moreover, on February 10, 2020, Plaintiff was ordered to show cause why the Court should not dismiss the action as a sanction. (ECF No. 191.) The Court held a two and a half hour hearing on the issue and allowed post-hearing briefing. (ECF No. 233; ECF No. 227.)

The final factor also favors dismissal. Two different magistrate judges ordered Plaintiff's counsel to pay monetary sanctions (including a $10,000 penalty for filing a sealed deposition transcript in the public record). The undersigned also warned counseled that she considered monetary sanctions at the December 10, 2019 hearing  The Court both considered and imposed less drastic sanctions before making a recommendation for dismissal.

---

[11] The Court does not consider Plaintiff Blackwell's filing of the state-court action to be sanctionable conduct. In fact, the Court denied Plaintiff Blackwell's motion to amend, in part, because it would decline to exercise supplemental jurisdiction over his proposed state-law claims (ECF No. 31, PageID.303), signaling to Plaintiff that he was free to file his proposed claims asserting alternate theories for his dismissal in state court. As noted above, it is the improper use of the discovery process in this action to unearth a basis for those claims that warrants sanctions. To this point, Plaintiff Blackwell's 11-month delay before filing his state-court complaint, after discovery in the instant case concluded, speaks volumes.

The Court is mindful that dismissal with prejudice is disfavored where it will work an injustice as to an innocent client. *Bradley J. Delp Revocable Trust*, 665 F. App'x at 521. However, in this case, use of the inherent power to order dismissal is necessary to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 520, 524. Moreover, here, dismissal does not work the injustice to the client that courts generally weigh heavily in declining to dismiss a case with prejudice. That is so because, now that Plaintiff has filed his complaint in Wayne County, Plaintiff's claim in this forum against the MSU Defendants appears to be prosecuted primarily for the purpose of gaining discovery to use in the other forum. Because Plaintiff has filed a separate cause of action that is more consistent with his counsel's theory of the case, the claim in this case is duplicative of that claim. Moreover, no other sanction appears to be likely to dissuade Plaintiff's counsel from the contumacious manner in which they have conducted this litigation.

As to the Detective Defendants, by contrast, the undersigned does not recommend dismissal with prejudice. Plaintiff has not directed the same vexatious and harassing conduct toward the Detective Defendants that he has against the MSU Defendants. Nor has Plaintiff's conduct demonstrated that his claim as to the Detective Defendants was prosecuted for an improper purpose. They are not named as defendants in the Wayne County action. While the Rule 11 violations were made in connection with discovery the Detective Defendants propounded, the undersigned believes there are effective sanctions short of dismissal that will remedy that improper conduct, as set out below.

## 2.    Removal of Counsel

Recognizing that it is a sanction to be used only with great caution, the undersigned nonetheless recommends counsel's removal. Based on the misrepresentations to the Court and

discovery abuses set out above, after numerous warnings and two monetary sanctions from two different magistrate judges, that sanction is warranted.

As noted above, courts have the authority to remove an attorney from a case pursuant to the Court's inherent power to regulate the conduct of attorneys practicing before it.  See *Chambers*, 501 U.S. at 43; *see also Lelsz v. Kavanagh*, 137 F.R.D. at 655-56 (N.D. Tex. 1991).

Given counsel's filing of false and misleading pleadings and statements in court, failure to correct the record, and disregard of the Court's repeated admonitions (including during the hearing on this matter), both counsel have failed to adequately carry out their duty of candor with the Court and have abused the discovery process.  Because the Court has repeatedly warned counsel, the undersigned has no reason to believe that Attorneys Paterson and Warnicke will improve their conduct going forward.  Therefore, to ensure the integrity of proceedings before the Court, both counsel should be removed as a sanction.  Attorney Warnicke contends that only Attorney Paterson filed the objectionable pleadings in this case, but his duty as co-counsel was to withdraw unethical motions, not to argue in favor of them, as he did in subsequent motions and at oral argument.[12] (*See, e.g.,* ECF No. 224, PageID.2711.)  Moreover, Attorney Warnicke's practice to obstruct discovery by sending all recipients of Rule 30(b)(6) subpoenas a letter objecting to the production of responsive documents without a good faith basis for an objection is a further ground for sanction.

---

[12] Counsel's conduct during the hearing did nothing to alleviate the Court's concerns. Attorney Warnicke repeatedly interrupted and talked over the Court and had to be admonished numerous times regarding that conduct and to focus his comments on the motion before the Court. (ECF No. 233, PageID.2894, 2896, 2925, 2926, 2927-28, 2953, 2981, 2983-84.)  He twice walked out of proceedings for brief periods without leave.  (*See* PageID.2959.)

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b)(1)(A), the Court finds and orders the following:

### A. Order on Fees and Costs

A sanction ordering attorneys' fees is limited to the attorney's fees the innocent party incurred solely because of the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017).  For the reasons discussed above, and pursuant to 28 U.S.C. § 1927, the Court will order monetary sanctions for fees and costs.  Counsel for both the MSU Defendants and the Detective Defendants are ordered to submit affidavits in support of their request for attorneys' fees and costs but should limit their requests to fees and costs resulting from the conduct found to have required sanctions as discussed above and should be broken down by motion or response.

### B. Orders on Individual Discovery Motions

Although some of the pending motions could be denied as moot if the Court accepts the undersigned's recommendation regarding dismissal as a sanction, the Court orders as follows:

#### 1. Plaintiff's Motion to Compel Defendant Dantonio's Deposition (ECF No. 165) and the MSU Defendants' Motion for a Protective Order (ECF No. 167)

Federal Rule of Civil Procedure 30(d)(1) directs that a deposition is limited to "one day of 7 hours."  The Court's October 21, 2019 Order sets out the same durational limit.  (ECF No. 93.)  Defendant Dantonio's deposition on January 10, 2020, started at approximately 10:00 a.m. and

stopped shortly before the Court closed at 5:30 p.m.  After breaks, that resulted in five hours and 55 minutes on the record.  Plaintiff argues he should have gotten his full seven hours.  (ECF No. 165.)  Defendant argues that Plaintiff should have made efforts to complete the deposition in one day.  (ECF No. 167.)

The parties' planning could have been better.  This was not their first deposition in a federal building.  The parties arranged for Defendant Dantonio's deposition to begin at 10:00 a.m.  Contrary to the suggestion in Plaintiff's motion (PageID.1775, 1777), that time was not set by the Court.  The administrative order simply repeated the beginning time set out in Plaintiff's deposition notice.  (ECF No. 226, PageID.2716.)  Nor was the Court aware that the parties would not have concluded by 5:00 p.m.  The Court is also cognizant of the additional burden and expense associated with a second session of the deposition.

As noted in *Adesanya v. Novartis Pharms. Corp.*, 755 F. App'x 154 (3d Cir. 2018), "Rule 30(d)(1) allows for one day of questioning, not 7 hours over multiple days."  *Id.* at 158.  Nonetheless, given the scheduling issue, a "circumstance" that "impeded…the examination," Fed. R. Civ. P. 30(d)(1), the Court would not be unsympathetic to Plaintiff's request for additional time if the Plaintiff had acted diligently and run out of time.

To succeed in his motion, Plaintiff was required to demonstrate an impediment that required the deposition to extend into a second day to fairly examine the deponent.  Fed. R. Civ. P. 30(d)(1).  In his briefing, Plaintiff identified the following topic areas on which he wished to inquire further:

- Staff evaluations and critiques that were produced on the scheduled deposition day;
- Staff evaluations and critiques produced on January 24, 2020; and
- Defendant Dantonio's performance evaluation of Plaintiff Blackwell.

(PageID.2201.)  At the hearing on this matter, Attorney Warnicke stated that he intended to use the additional time to ask more questions about Plaintiff's performance and job duties (including mentoring students and as a recruiter) and the credibility of the reasons Defendant Dantonio articulated for Plaintiff's termination.  (ECF No. 233, PageID.2897-900.)  Attorney Warnicke also argued that he had additional questions based on the deposition he took of Bill Beekman (MSU's current athletic director) a week or ten days after Defendant Dantonio's deposition.  (PageID.2899-900.)

A review of Defendant Dantonio's deposition demonstrates that Plaintiff's counsel used it as a fishing expedition to adduce testimony he subsequently used for the purpose of filing his state court case.  Plaintiff's response to Defendants' motion for a protective order trumpets the completely irrelevant testimony that was adduced from Defendant Dantonio regarding alleged NCAA violations, demonstrating that Plaintiff had ample time to take relevant discovery, had he so restricted himself.  Therefore, the Court finds that Plaintiff had sufficient time and opportunity to explore relevant issues with Defendant Dantonio and declines to order Defendant Dantonio to sit for an additional one hour and five minutes.

Therefore, Plaintiff's motion to compel (ECF No. 165) is **DENIED**.  Defendant's motion for a protective order (ECF No. 167) is **GRANTED**.  Defendant requests that the Court order sanctions, which are appropriate pursuant to Fed. R. Civ. P. 37(a)(5).  The Court does not, however, order sanctions in addition to those recommended and ordered above.

Should the Court adopt the undersigned's recommendation that the claim against the MSU Defendants be dismissed, both motions would be denied as moot.

### 2. Plaintiff's Motion for Protective Order regarding 30(b)(6) Depositions and Document Subpoenas (ECF No. 173)

Because, as noted in the response filed by Defendants Davis and Miller, the subpoenas directed to the Sound Mind Sound Body entities were for a proper purpose, namely discovery regarding Plaintiff's claimed damages, and because Plaintiff Blackwell's motion is unfounded even in its premise, it is **DENIED**.  The Sound Mind Sound Body entities are required to produce all responsive documents and submit to the requested depositions.

Defendants are entitled to their attorneys' fees and costs in responding to Plaintiff's Motion for a Protective Order.  Fed. R. Civ. P. 37(a)(5), 26(c)(3).  Defendants are ordered to submit affidavits documenting their fees and costs.

### 3. The Detective Defendants' Motion for Sanctions (ECF No. 211)

The Detective Defendants have filed a motion for sanctions in which they argue that Plaintiff has so obstructed discovery in this case that dismissal is warranted.  The Court has carefully considered both parties' arguments.  As discussed above, the undersigned does not recommend dismissal as to Plaintiff's claim and instead recommends removal of counsel and monetary sanctions.  Therefore, the motion is **GRANTED IN PART AND DENIED IN PART**.

The following are further orders on issues raised in the Detective Defendants' Motion for Sanctions:

### a. Obstruction of Discovery into Third Party Bank Records and Financial Transactions

The Detective Defendants argue that Attorney Warnicke obstructed third parties from responding to subpoenas issued to banks and the Lifting as We Climb Foundation by sending letters objecting to the subpoenas, representing that a motion would be filed with the Court, and directing those third parties not to produce documents until further order of the Court.  (ECF No. 212, PageID.2586-89.)  Plaintiff has never filed motions to quash those subpoenas.  Defendants

Davis and Miller conceded that they did receive documents from the banks but have not received a full production of documents pursuant to the subpoena to the Lifting as We Climb Foundation. (ECF No. 233, PageID.2970-71).   The D.C. District Court granted the Detective Defendants' motion to compel compliance on December 9, 2019, and the matter is now set for a contempt hearing in that forum.   *See Miller v. Lifting as We Climb Found., Inc.*, No. 1:19-MC-183 (D.D.C. Dec. 12, 2019) (ECF Nos. 10, 16).   Once the proceedings have concluded in that forum, the Court will consider whether additional sanctions, in the form of preclusion, should apply.[13]

### b.   Obstruction of Discovery to the SMSB Entities

The Detective Defendants also assert that Plaintiff, as the registered agent, has refused service of document subpoenas to the SMSB Entities, requiring Attorney McCarthy to serve Plaintiff Blackwell personally at Defendant Dantonio's deposition on January 10, 2020. (PageID.2589-90; *see also* ECF No. 193, PageID.2273-74.)   The subpoenas required responsive documents to be produced by January 27.   The SMSB Entities have produced no documents responding to those subpoenas.   As discussed above, the Court has denied Plaintiff's motion for a protective order and orders compliance with those subpoenas both as to documents and depositions.

### 4.   Non-Party Michelle Franklin's Motion for a Protective Order (ECF No. 188)

As discussed above, the filing of Non-Party Michelle Franklin's Motion for a Protective Order violated Rule 11 because it was filed without counsel conducting a reasonable inquiry into

---

[13] Defendants also aver that, although they have provided notice to Plaintiff of all third-party subpoenas they have issued, as Rule 45(a)(4) requires, Plaintiff has not provided notice of any of the subpoenas he has issued in this case.   (ECF No. 212, PageID.2587, n.2; ECF No. 233, PageID.2968.)   While that is a correct statement of the rule, and certainly indicative of Plaintiff's failures in this case, the Detective Defendants have not demonstrated that they have been prejudiced by Plaintiff's failure to comply.

its basis in fact.  At the hearing on this matter, Attorney Paterson conceded that the Detective

Defendants should be allowed to depose her but contended that the deposition should be limited

to one hour in duration.  The Court declines, at this juncture, to limit the deposition in duration but

expects that counsel for the Detective Defendants will not unduly prolong the questioning of Non-

Party Michelle Franklin.  Therefore, the motion is **DENIED**.

Defendants are entitled to their attorneys' fees and costs in responding to Non-party

Franklin's Motion for a Protective Order.  Fed. R. Civ. P. 37(a)(5), 26(c)(3).  Defendants are

ordered to submit affidavits documenting their fees and costs.

### 5. The MSU Defendants' Emergency Motion to Be Permitted to Submit Evidence (ECF No. 229)

The MSU Defendants filed a motion to submit evidence related to Plaintiff's filing of a

related state court action.  The documents submitted are relevant to the issues discussed above,

and that motion is **GRANTED**.

## <u>REFERRAL FOR DISCIPLINE</u>

This Court refers Attorney Paterson to Chief Judge Jonker for consideration of whether

discipline is appropriate.

Attorney Paterson does not come into this dispute on a clean slate.[14]  As the Sixth Circuit

noted in *Davis v. Johnson*, 664 F. App'x 446 (6th Cir. 2016), Paterson has "a prolific history

litigating cases in Michigan state courts and federal courts" that includes filings that "could be

defined, in many instances, as repetitive, vexatious, and frivolous."  *Id.* at 450.  "Prolific and

vexatious litigators 'which abuse the judicial process' can be appropriately sanctioned for such

conduct."  *Id.* at 451 (quoting *Chambers*, 501 U.S. at 44-45).  The Sixth Circuit warned that a

---

[14] The Court has not considered Attorney Paterson's prior history of discipline in state and federal court for any other aspect of this report and recommendation or memorandum opinion and order.

litigant "should not be allowed to 'waste the court's time and resources with cantankerous conduct.'" *Id.*

In *Williams v. Detroit Downtown Dev. Auth.*, 2018 WL 4901158 (E.D. Mich. Oct. 9, 2018), the Eastern District of Michigan dismissed an action Paterson filed as a sanction for Paterson's conduct, noting that Paterson had "violated three of the [c]ourt's discovery orders, ignored the Federal Rules of Civil Procedure, and had been less than honest in…representations to the [c]ourt," and holding that Paterson had engaged in "contumacious" conduct. *Id.* at \*6. In particular, the court found that Paterson and his client had engaged in discovery abuse that went "beyond mere violation of the local rules or dilatory tactics" in failing to produce numerous relevant documents resulting in discovery delays. *Id.* The court also noted that Paterson's accusations that the defendants' allegations were "misleading and false" were, themselves, misleading and false. *Id.*

In *Davis v. Detroit Downtown Dev. Auth.*, 782 F. App'x 455 (6th Cir. 2019), the Sixth Circuit affirmed sanctions in the amount of $13,506 against Paterson, concluding that he "went too far" when he "pursued two frivolous claims and one frivolous motion, necessitating unnecessary legal fees for defendants…." *Id.* at 456. In affirming the district court's order, the Sixth Circuit noted that Paterson's arguments were conclusory but stated that "Paterson quickly runs out of conclusions, so he shifts to misrepresentations." *Id.* at 457. Specifically, the Sixth Circuit held that Paterson misrepresented the record in arguing that defense counsel's reasonable attorneys' costs were inflated. *Id.* at 458. The Sixth Circuit rejected his appeal, noting that it was "full of legally meaningless attacks and diversions." *Id.*

In *Carmack v. City of Detroit*, 2019 WL 4670363 (E.D. Mich. Sept. 25, 2019), the Eastern District of Michigan sanctioned the plaintiff after his counsel, Paterson, filed two complaints

whose allegations he ultimately admitted he did not know whether he could support.  *Id.* at *5.[15]
He also refused to concur in defendants' "requests that he dismiss certain baseless claims," violated
a court order "prohibiting him from taking discovery, and twice attempted to mislead the Court on
material matters."  *Id.* at *1, *5.  The *Carmack* court found that "Paterson's course of conduct
warrant[ed] the imposition of sanctions under the Court's inherent power."  *Id.* at *1.  In particular,
Paterson attempted to evade a discovery stay the court put in place after defendants filed an
apparently meritorious motion to dismiss by taking depositions in a state court case and asking the
witnesses questions regarding the case in which discovery had been stayed.  *Id.* at *4.  During the
court's questioning, it became apparent that Paterson attempted to mislead the court.  *Id.* at *4-5.
The court sanctioned Paterson $7500, noting that his "conduct fell far outside the realm of what
could be considered permissible zealous advocacy."  *Id.* at *8.

   In *Lotus Indus v. City of Detroit*, 2018 WL 4005608 (E.D. Mich. Aug. 22, 2018), Paterson
represented the plaintiffs.  The court denied plaintiffs' motion for leave to amend, concluding that
"[p]laintiffs have flagrantly disregarded a court order by relying on [a] deposition in crafting their
amended complaint," where a court order in a different case prohibited the use of that deposition
for anything other than that litigation.  *Id.* at *4.  The *Lotus Industries* court held that Paterson's
"troubling inclusion of allegations pulled straight from [that] deposition is bad faith conduct that
is only exacerbated by…clear misrepresentations about the substance of [the] testimony."  *Id.*  The
court noted that one of the allegations in the proposed amended complaint was a "stark

---

[15] In *Carmack*, Paterson "filed two complaints accusing the Defendants of misconduct even though
he later admitted that it was 'hard' to get his 'arms around' what [plaintiff] had told him and even
though he did not know whether he could 'support any of the allegations' that he made in those
pleadings."  *Id.*  "That Paterson filed both pleadings without knowing whether he could support
'any' of the allegations shows that he was proceeding in bad faith and without any regard for the
rules that specifically required him to conduct a reasonable investigation into his claims before he
filed them."  *Id.* (citing Fed. R. Civ. P. 11(b)(3)).

misrepresentation of the testimony on which it relies." *Id.* *3 n.4. *See also Lotus Indus., LLC v. Archer*, 2019 WL 4126558 (E.D. Mich. Aug. 30, 2019) (sanctioning Paterson $2500 for fees and costs).

In *Richards v. Wayne Cty. Airport Auth.*, 2014 WL 2600550 (Mich. Ct. App. June 10, 2014), the Michigan Court of Appeals affirmed sanctions against Paterson, holding that he had filed a "frivolous" action, noting that "the trial court found plaintiffs' complaint to be frivolous because it determined that the complaint's primary purpose was to harass, embarrass, and injure defendants." *Id.* at *2. The trial court had "found that plaintiffs' counsel wasted the court's and defendant's time and resources by filing [the] action." *Id.*

Based on his conduct in this case and his history of inappropriate conduct in both state and federal court, the Court orders that Attorney Paterson be referred to Chief Judge Jonker for determination of whether he should be disciplined pursuant to Local General Rule 2.3(d).

Dated: March 20, 2020                                          /s/ Sally J. Berens
                                                              SALLY J. BERENS
                                                              U.S. Magistrate Judge