UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS E. BLACKWELL, II,**
    Plaintiff,
v.

**LOU ANNA K. SIMON,**
**MARK DANTONIO, et al.,**
    Defendants.

Case No. 1:18-cv-1261
Hon. Janet T. Neff
Mag. Judge Sally J. Berens

### PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT MARK DANTONIO FOR PROVIDING FALSE TESTIMONY DURING HIS DEPOSITION AND REQUEST FOR EVIDENTIARY HEARING.

NOW COMES PLAINTIFF, CURTIS BLACKWELL, II ("**Plaintiff**" or "**Plaintiff Blackwell**"), by and through his attorney, ANDREW A. PATERSON, and for his Motion for Sanctions Against Defendant Mark Dantonio For Providing False Testimony During His Deposition and Request for Evidentiary Hearing, states as follows:

### STATEMENT OF NON-CONCURRENCE

Plaintiff's counsel explained the nature of this motion and its legal basis to Defendants Mark Dantonio, Mark Hollis and Lou Anna Simon's counsel and requested concurrence, via electronic mail, as well as making himself available for phone discussions, but was unable to obtain concurrence in the relief sought at the time of this filing. (Note: Plaintiff is also filing a separate statement pursuant to Local Rule 7.1(d)).

### I.     INTRODUCTION

In accordance with retired-Magistrate Judge Carmody's October 21, 2019 order [ECF No. 93], on January 10, 2020, Defendant Mark Dantonio ("Defendant Dantonio") sat for a deposition, which was taken at the federal courthouse in Grand Rapids, Michigan at Defendant Dantonio's counsel's request. During his deposition, Defendant Dantonio was asked relevant questions pertaining to his use of Plaintiff in recruiting certain star student-athletes to possibly join the MSU

football program. Specifically, on page 66 of Defendant Dantonio's deposition transcript [ECF No.183-1 at PageID. 2217], Defendant Dantonio was asked and answered the following questions:

> Q.   "Did he [Blackwell] ever go with you to visit any recruits at their homes?"
>
> A.   "**No**."
>
> Q.   Would that have been a violation of NCAA rules?
>
> A.   "**Yes**."

(ECF No.183-1 at PageID. 2217)**.**

Such questions were clearly relevant to Plaintiff's claims, as they went "to an individual defendant's decision to suspend Plaintiff Blackwell or not to renew Plaintiff Blackwell's contract," as this Court previously held in its December 18, 2019 Order [ECF No. 160]. Moreover, given that Defendants have continuously asserted conflicting and inconsistent reasons for the non-renewal of Plaintiff's Employment Agreement, such inquiries were not only relevant to Plaintiff's claims, but were necessary to exploring, countering and exposing Defendant Dantonio's asserted defenses as pretextual, as well as Defendant Dantonio's lack of credibility on material issues. Said inconsistencies, particularly when they are made under oath, illustrate Defendant Dantonio's pretext in not renewing Plaintiff's contract. *See Cicero v. Borg-Warner Auto., Inc*., 280 F.3d 579, 592 (6th Cir. 2002).

However, Defendant Dantonio's testimony was not truthful. Ms. La Keshia Neal's ("Ms. Neal") affidavit [ECF No. 196-1 at PageID. 2381-2385], with attached photographs, confirm the factual allegations stated in footnote 2 of Plaintiff's motion for protective order [ECF No. 173] and in Plaintiff's response in opposition to Defendant Dantonio's motion for protective order [ECF No. 183]. The affidavit of Ms. Neal is significant and of great importance because Ms. Neal is the mother of the former 'five-star' high school football recruit who was referenced in Plaintiff's

response in opposition to Defendants' motion for protective order. (ECF No. 183, PageID. 2203). Ms. Neal's affidavit and her photographs plainly and indisputably refute the sworn testimony Defendant Dantonio provided at his deposition. (ECF No. 196-1 at PageID. 2381-2385).

Accordingly, pursuant to the Court's inherent authority to sanction a party for misconduct during litigation, Plaintiff prays that this Honorable Court properly exercises its discretion and sanction Defendant Dantonio for providing false testimony during his deposition.

## II.  LAW AND LEGAL ANALYSIS

### A. The Court Has the Inherent Authority to Sanction Defendant Dantonio for Providing False Testimony During His Deposition.

Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Railway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)); see also *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 511-512 (6th Cir. 2002). Indeed, as the Sixth Circuit observed in *First Bank of Marietta,* while bad faith is a requirement in the Sixth Circuit for a court's reliance on its inherent authority, "this Circuit has also upheld the use of such sanctions for conduct that was tantamount to bad faith," and "even in the absence of a specific finding of bad faith." *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 519 (6th Cir. 2002) (internal quotation marks and citations omitted).

Bad faith, in turn, is associated with conduct that is intentional or reckless. *See Schafer v. City of Defiance Police Dep't,* 529 F.3d 731, 737 (6th Cir. 2008*)*; *United States v. Wheeler,* 154 F.Supp.2d 1075, 1078 (E.D. Mich. 2001) (sanctions under court's inherent authority warranted for reckless or bad-faith conduct, and defining "recklessness" as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care," such that it is "more than mere

negligence but less than intent"); accord *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000). Moreover**,** the Sixth Circuit has expressly authorized the inherent power of a court to sanction both parties and their counsel. *Stalley v. Methodist Healthcare,* 517 F.3d 911, 920 (6th Cir. 2008) (emphasizing that a court's "inherent powers include the ability to 'fashion an appropriate sanction for conduct which abuses the judicial process,'" quoting *Chambers,* 501 U.S. at 44, and observing that such "inherent power is not limited to sanctioning attorneys only; we can sanction a party as well," citing *Chambers,* 501 U.S. at 48).

Here, Defendant Dantonio's misconduct of providing false testimony during his deposition warrants being sanctioned by this Court because it was reckless and intentional and constitutes bad faith or is tantamount to bad faith. Ms. Neal's affidavit clearly rebuts Defendant Dantonio's false testimony about the presence of Plaintiff Blackwell during the off campus recruiting visit to her son at her home. In her affidavit, Ms. Neal attests that she can say with absolute certainty that Plaintiff was in her home with Dantonio and the other MSU football coaches during her son's official recruiting visit on December 7, 2015. (ECF No. 196-1 at PageID. 2381-2385). Ms. Neal also provided the irrefutable evidence-- a picture is worth a thousand words-- that corroborates the facts set forth in her affidavit. (ECF No. 196-1 at PageID. 2381-2385). **Notably, to date**, **Defendant Dantonio has not provided an affidavit to this Court refuting Ms. Neal's affidavit and/or Plaintiff's claims and allegations!**

Defendant Dantonio mandated Plaintiff's presence during this recruiting visit because of Plaintiff's ties and influence in the high school football community. Although it will ultimately be left to the U.S. Attorney's Office for the Western District of Michigan to determine whether

federal criminal charges against Defendant Dantonio are warranted[1], Defendant Dantonio's untruthful answers *may* constitute perjury under federal law.  The elements of perjury are "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L.Ed.2d 445 (1993).  "A matter is considered material if it 'would tend to influence or affect the issue under determination' if believed." *U.S. v Boring*, 557 F.3d 707, 712 (6th Cir. 2009) (quoting U.S.S.G. § 3C1.1 cmt n. 6).  Plaintiff believes Defendant Dantonio's false testimony was concerning a material matter and his false answer was willfully given.  **Again, Defendant Dantonio, to date, has not provided an affidavit to this Court refuting Plaintiff's claims and allegations or Ms. Neal's affidavit and documentary evidence**!

Although the decision of whether federal criminal perjury charges will be instituted against Defendant Dantonio is still to be determined, **Defendant Dantonio's false testimony in these proceedings nonetheless is sanctionable under the Court's inherent power to sanction**. A review of Defendant Dantonio's deposition testimony clearly reveals that Defendant Dantonio was emphatic that he has never had Plaintiff accompany him on any recruiting visits to the homes of potential recruits because, as Defendant Dantonio testified, that would constitute a violation of NCAA rules. (ECF No. 183-1 at PageID. 2217).  Moreover, never during this exchange of questioning, did Defendant Dantonio express any confusion, uncertainty, or memory loss.  (ECF No. 183-1 at PageID. 2213-2217).  A review of the videotape from Defendant

---

[1] In light of the obscure 1890 U.S. Supreme Court ruling in *In re Loney*, 134 U.S. 372, 375-376 (1890), Plaintiff's counsel will not be seeking the empaneling of a one-man grand juror pursuant to Mich. Comp. Laws §767.3 to investigate whether Defendant Dantonio committed perjury in this federal proceeding under Michigan's perjury statute, being Mich. Comp. Laws §750.423(1). (ECF No. 293 at PageID. 4508-4509).

Dantonio's deposition would reveal his facial expressions and emotions when asked questions pertaining to recruiting matters. If the Court believes it would facilitate its determinations, Plaintiff's counsel will provide the Court with a copy of Defendant Dantonio's videotaped deposition.

In addition to providing untruthful testimony pertaining to the use of Plaintiff on a recruiting visit to the home of a star recruit, Defendant Dantonio may have also provided untruthful testimony with respect to a university booster/donor providing the parents of star recruits jobs/employment upon signing to play for MSU. In responding to questions pertaining to his request for Plaintiff to ask well-known MSU donor Bob Skandalaris to secure employment for the parents of certain high-profile football recruits, over the objections of his legal counsel, Defendant Dantonio **angrily** denied ever requesting Plaintiff to ask Bob Skandalaris to secure employment for the parents of certain high-profile recruits and further explained that the MSU Compliance office approved the jobs that the parents of certain MSU football recruits had secured at a company affiliated with MSU donor Bob Skandalaris. (ECF No. 183-1 at PageID. 2219-2221).

During the January 21, 2020 deposition of MSU Compliance Officer Jennifer Smith, Plaintiff's counsel specifically asked Jennifer Smith about whether the MSU Compliance office had approved the employment, of any of the parents of certain MSU football recruits, with a company affiliated with MSU donor Bob Skandalaris. In response to this line of questioning, **Jennifer Smith testified that she did not recall the compliance office approving any such arrangements.** (ECF No. 196-9 at PageID. 2426-2427). This is potentially problematic considering NCAA Bylaw/Rule 13.2.1.1[2] prohibits improper offers or inducements, which

---

[2] NCCA Bylaw/Rule 13.2.1.1 provides:
**13.2.1.1 Specific Prohibitions.** Specifically prohibited financial aid, benefits and arrangements include, but

includes providing employment to parents of scholar-athletes. (ECF No.183-4). Defendant Dantonio's misconduct in this regard was also done in bad faith or was tantamount to bad faith.

### 1. Defendant Dantonio's Misconduct In This Case Has Prompted An NCAA Investigation.

As further evidence that Defendant Dantonio's false testimony in this case constitutes bad faith or is tantamount to bad faith, are actions taken since the filing of Plaintiff's response in opposition to Defendant Dantonio's motion for protective order [ECF No. 183] and since the filing of Ms. Neal's affidavit and supporting documentary evidence [ECF No. 196-1]. Various media outlets have since published that Michigan State University ("MSU"), *after self-reporting* Plaintiff's meritorious allegations, is *currently* under investigation by the NCAA for possible major NCAA violations.[3]  Upon information and belief, the NCAA's *current* investigation

---

are not limited to, the following: **[R]** *(Revised: 10/28/97, 11/1/00, 4/23/08, 4/25/18)*
(a) An employment arrangement for a prospective student-athlete's family members;
(b) Gift of clothing or equipment;
(c) Co-signing of loans;
(d) Providing loans to a prospective student-athlete's family members or friends;
(e) Cash or like items;
(f ) Any tangible items, including merchandise;
(g) Free or reduced-cost services, rentals or purchases of any type;
(h) Free or reduced-cost housing;
(i) Use of an institution's athletics equipment (e.g., for a high school all-star game);
(j) Sponsorship of or arrangement for an awards banquet for high school, preparatory school or two-year college
athletes by an institution, representatives of its athletics interests or its alumni groups or booster clubs; and
(k) Expenses for academic services (e.g., tutoring, test preparation) to assist in the completion of initial-eligibility
or transfer-eligibility requirements or improvement of the prospective student-athlete's academic profile in conjunction with a waiver request.

[3] *See* USA Today's February 18, 2020 article at https://www.usatoday.com/story/sports/ncaaf/2020/02/18/mark-dantonio-ncaa-violation-claims-michigan-state/4801018002/; *see also* The Detroit News' February 18, 2020 article at https://www.detroitnews.com/story/sports/college/michigan-state-university/2020/02/18/michigan-state-say-its-investigating-ncaa-violation-claims-curtis-

pertains and/or relates to the false testimony Defendant Dantonio provided during his deposition in this case and the allegations Plaintiff properly and truthfully asserted in Plaintiff's response in opposition to Defendant Dantonio's motion for protective order [ECF No. 183 at PageID. 2203-2206] and in response to Magistrate Judge Sally Berens' order to show cause [ECF No. 196] that pertained to possible NCAA violations allegedly committed by Defendant Dantonio and MSU.

In fact, just recently (a few weeks ago), Plaintiff was contacted by a representative from the NCAA seeking to schedule a formal investigatory interview with the Plaintiff to discuss his claims and allegations that Defendant Dantonio may have committed numerous NCAA violations as referenced in Plaintiff's filings filed with this Court. In consultation with his legal counsel, Plaintiff intends on scheduling a formal interview in the near future with representatives from the NCAA to provide them with additional information supporting Plaintiff's claims and allegations that Defendant Dantonio and MSU may have committed NCAA violations.

### B. Evidentiary Hearing Is Necessary for the Court to Determine the Severity of Defendant Dantonio's Misconduct.

In *Chambers,* the U.S. Supreme Court listed a number of judicial acts that are within a court's inherent authority:

> "... a federal court has the power [1] to control admission to its bar and to discipline attorneys who appear before it ...; [2] to punish for contempts ... '[for] disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of the trial'...; [3] to vacate its own judgment upon proof that a fraud has been perpetrated upon the court ...; [4] **to conduct an independent investigation in order to determine whether it has been a victim of fraud** ...; [5] [to] bar from the courtroom a criminal defendant who disrupts the trial ...; [6] [to] dismiss an action on grounds on forum non conveniens ...; [7] [to] act *sua sponte* to dismiss a suit for failure to prosecute ...; [8] to fashion an appropriate sanction for conduct which abuses the judicial process ... [including] dismissal of a lawsuit ... [or] assessment of attorney's fees."

blackwell/4796306002/.

*Chambers,* 501 U.S. at 43, 45, 111 S.Ct. 2123, (quoting *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (other citations omitted)) (emphasis supplied).

Here, Plaintiff believes that Defendant Dantonio, by providing false testimony during his deposition, may have committed a fraud on the Court. It is important to note that although Plaintiff has provided this Court with independent evidence of the fact of Defendant Dantonio's false statement [ECF No. 196-1] and it has now been confirmed that the NCAA is conducting an investigation into Plaintiff's allegations of NCAA violations allegedly committed by Defendant Dantonio, Plaintiff's filings revealing Defendant Dantonio's alleged misconduct was recently characterized by Magistrate Judge Sally Berens as "false and misleading". (ECF No. 234). As noted, Plaintiff has provided this Court with an affidavit from a third-party who has no stake or interest in this case. (ECF No. 196-1). However, to date, Defendant Dantonio has not provided this Court with a sworn affidavit otherwise refuting Ms. Neal's affidavit or Plaintiff's allegations. Therefore, for this Court to determine whether Defendant Dantonio provided false testimony during his deposition with respect to the recruiting visit allegation, an evidentiary hearing would be appropriate and necessary to obtain sworn testimony from relevant witnesses, including but not limited to, the Plaintiff, Ms. Neal, and of course, Defendant Dantonio.

In addition, an evidentiary hearing would also be necessary and beneficial for the Court to determine whether Defendant Dantonio provided false testimony with respect to the allegations pertaining to jobs being given to the parents of star recruits. As noted, during the January 21, 2020 deposition of MSU Compliance Officer Jennifer Smith, Plaintiff's counsel specifically asked Jennifer Smith about whether the MSU Compliance office approved the employment of the parents of certain MSU football recruits through a company affiliated with MSU donor Bob Skandalaris.

In response to this line of questioning, **Jennifer Smith testified that she did not recall the compliance office approving any such arrangements.** (ECF No. 196-9 at PageID. 2426-2427)**.** However**,** Jennifer Smith's testimony conflicts with Defendant Dantonio's testimony on this issue. (ECF No. 183-1 at PageID. 2219-2221). Therefore, it would be prudent for the Court to judge the credibility of certain witnesses to determine whether Defendant Dantonio provided false testimony during his deposition with respect to the allegations pertaining to jobs being given to the parents of star recruits.

An evidentiary hearing would be best for all parties. It will allow both sides to present proofs to this Court, but more importantly, it will allow the parties to prove their respective legal positions. In the end, justice will be served if an evidentiary hearing is held because a "complete" record will be established, and the Court will be able to determine for itself whether Defendant Dantonio provided false testimony under oath.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Plaintiff prays that this Honorable Court GRANT his motion for sanctions against Defendant Dantonio for providing false testimony during his deposition and Plaintiff further prays that this Honorable Court further orders that an evidentiary hearing be held for the Court to determine whether Defendant Dantonio provided false testimony during his deposition.

Dated: May 17, 2020
Respectfully submitted,
*/s/ ANDREW A. PATERSON*
ANDREW A. PATERSON (P18690)
Co-Counsel for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

## LOCAL RULE CERTIFICATION

I, Andrew A. Paterson, certify that the concurrence requirement set forth in this document complies with Local Rule 10, including: 8 ½ x 11 inch paper, double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 12 point (for proportional fonts). I also certify that it is the appropriate length. There are a total of 3,168 words in this motion and brief. (Note: Plaintiff is also filing a separate statement pursuant to Local Rule 10).

Respectfully submitted,

*/s/ ANDREW A. PATERSON*
ANDREW A. PATERSON (P18690)
Co-Counsel for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

## CERTIFICATE OF SERVICE

I, ANDREW A. PATERSON, certify that forgoing document(s) was filed and served via the Court's electronic case filing and noticing system (ECF) this 17th day of May, 2020, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

Dated: May 17, 2020   Respectfully submitted,

*/s/ ANDREW A. PATERSON*
ANDREW A. PATERSON (P18690)
Co-Counsel for Plaintiff
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com