UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS E. BLACKWELL, II,

    Plaintiff,

v.

LOU ANNA K. SIMON, in her individual
capacity as president of Michigan State University,
MARK DANTONIO, in his individual capacity
as Head Football Coach of Michigan State
University, MARK HOLLIS, in his individual
capacity as Director of Intercollegiate Athletics for
Michigan State University, DETECTIVE CHAD
DAVIS, in his individual capacity as a detective
for the Michigan State University Police
Department, and DETECTIVE SAM MILLER,
in his individual capacity as a detective for the
Michigan State University Police Department,

    Defendants.

Case No: 18-cv-01261

Hon. Janet T. Neff

Magistrate Judge Sally J. Berens

---

| THE CROMER LAW GROUP PLLC | KIENBAUM HARDY |
|---|---|
| Ronnie E. Cromer, Jr. (P59418) | VIVIANO PELTON & FORREST, P.L.C. |
| Attorney for Plaintiff | Thomas G. Kienbaum (P15945) |
| 24901 Northwestern Highway, Suite 612 | William B. Forrest III (P60311) |
| Southfield, MI 48075 | Attorneys for Defendants Dantonio, Hollis, and Simon |
| (248) 809-6790 | 280 N. Old Woodward Ave., Ste. 400 |
| rcromerjr@thecromerlawgroup.com | Birmingham, MI 48009 |
| | (248) 645-0000 |
| | tkienbaum@khvpf.com.com |
| | wforrest@khvpf.com |

RHOADES MCKEE, PC
Bruce Neckers (P18198)
Paul McCarthy (P47212)
Attorneys for Defendants Davis and Miller
55 Campau Ave, NW, Ste. 300
Grand Rapids, MI 49503
(616) 233-5133
bneckers@rhoadesmckee.com
mccarthy@rhoadesmckee.com

---

**Joint Motion for Entry of Judgment Against Attorneys Warnicke and Paterson, and for Entry of Order Suspending Them From Practice in This Court**

Defendants Lou Anna K. Simon, Mark Dantonio, Mark Hollis, and Detectives Chad Davis and Sam Miller, through their respective counsel, Kienbaum Hardy Viviano Pelton & Forrest, P.L.C., and Rhoades McKee, P.C., for their Joint Motion for Entry of Judgment Against Attorneys Warnicke and Paterson, and for Entry of Order Suspending Them From Practice in This Court, say as follows:

1. This Court is familiar with the history of this case, and specifically the misconduct of Plaintiff and his counsel, resulting in the dismissal of Plaintiff's case against the MSU Defendants; disqualification of counsel Thomas Warnicke and Andrew Paterson from further participating in this case; and additional monetary sanctions against them totaling $52,010. (ECF No. 234 & 326).

2. On July 29, 2020, this Court ordered Warnicke and Paterson to pay the $52,010 in sanctions on or before August 12, 2020 (ECF No. 347).

3. After Warnicke and Paterson failed to make the payment, Defendants moved this Court to hold them in contempt. This Court granted the motion, holding that "Attorneys Warnicke and Paterson are ADJUDGED to be in contempt for failing to comply with the Orders of this Court (ECF Nos. 326 & 347)." ECF No. 384, PageID.6453. This Court also reconfirmed that the sanction award was joint and several to Warnicke and Paterson. *Id.*, PageID.6448.

4. In addressing contempt sanctions, this Court recognized its authority to incarcerate Warnicke and Paterson or to suspend their ability to practice before this Court as coercive sanctions to enforce the Court's sanctions order. *Id.*, PageID.6451. Nevertheless, the Court "decline[d], at this time, to incarcerate or suspend either attorney from practicing within the Western District of Michigan." *Id.*

5. Instead, this Court, acknowledging Warnicke's request for a payment plan, held that Warnicke would be required to pay $7,500 per month toward his joint-and-several obligation, with the first payment due December 1, 2020—and that if Warnicke did not make a timely payment, immediate sanctions of $100 per day, retroactive to August 12, 2020, would be added to the joint-and-several award. *Id.*, PageID.6451-52.

6. Despite proposing a payment plan in the first place, Warnicke did not make the first required payment on December 1, 2020 (or at any time thereafter), thus triggering the retroactive daily penalty. As of January 11, 2021, the additional daily sanctions that have accrued total $15,200, and counting. Neither Warnicke nor Paterson has paid a dime of this money.

7. Instead, on November 29, 2020, Warnicke and Paterson each filed an interlocutory appeal but failed to seek, let alone obtain, a stay of this Court's order obligating them to make payments starting December 1, 2020. They likely failed to request a stay pending appeal because they have almost no likelihood of success on the merits, and because a stay generally requires the posting of a supersedeas bond or other security—something that would run counter to their strategy of obstruction.

8. Warnicke and Paterson are thus forcing Defendants to incur the time and expense of appellate proceedings while utterly ignoring this Court's sanctions order. In addition, Paterson and Blackwell are suing Defendant Dantonio—and his counsel here Tom Kienbaum—in a sister court in the Eastern District of Michigan while Paterson flouts this Court's sanctions order. (E.D. Case No. 20-cv-11493, ECF No. 1.)

9. Because the coercive daily sanctions have proven to be insufficient—even with this Court's grace in allowing monthly payments—the Court should take the additional steps of: (1) reducing the monetary sanctions award accrued to date to a money judgment; and (2) suspending

Warnicke and Paterson's right to practice in the Western District of Michigan until the *entire* joint-and-several award is paid in full.

    WHEREFORE, Defendants request the Court enter an order:

    a. suspending Paterson and Warnicke from practicing within the Western District of Michigan until the contempt is lifted through the payment of the *entire* joint and several award (including the $100 per day sanction that continues to accrue);

    b. reducing the $52,010 fee sanction, plus the $15,200 in daily contempt sanctions that have accrued through January 11, 2021 (for a total of $67,210) to a money judgment to be increased by any accruing deficiency, and permitting Defendants to apply for an award of fees incurred in connection with any reasonable collection efforts undertaken; and

    c. granting such further relief as the Court deems just and appropriate.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: /s/ *Thomas G. Kienbaum*
    Thomas G. Kienbaum (P15945)
    William B. Forrest III (P60311)
Attorneys for Defendants Dantonio,
Hollis, and Simon
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
tkienbaum@khvpf.com
wforrest@khvpf.com

Dated: January 12, 2021

RHOADES MCKEE, PC

By:/s/*Paul McCarthy* (signed with permission)
Bruce Neckers (P18198)
Paul McCarthy (P47212)
Attorneys for Defendants Davis and Miller
55 Campau Ave, NW, Ste. 300
Grand Rapids, MI 49503
(616) 233-5133
bneckers@rhoadesmckee.com
mccarthy@rhoadesmckee.com

Dated: January 12, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS E. BLACKWELL, II,

      Plaintiff,

v.

LOU ANNA K. SIMON, in her individual
capacity as president of Michigan State University,
MARK DANTONIO, in his individual capacity
as Head Football Coach of Michigan State
University, MARK HOLLIS, in his individual
capacity as Director of Intercollegiate Athletics for
Michigan State University, DETECTIVE CHAD
DAVIS, in his individual capacity as a detective
for the Michigan State University Police
Department, and DETECTIVE SAM MILLER,
in his individual capacity as a detective for the
Michigan State University Police Department,

      Defendants.

Case No: 18-cv-01261

Hon. Janet T. Neff

Magistrate Judge Sally J. Berens

---

| | |
|---|---|
| THE CROMER LAW GROUP PLLC<br>Ronnie E. Cromer, Jr. (P59418)<br>Attorney for Plaintiff<br>24901 Northwestern Highway, Suite 612<br>Southfield, MI  48075<br>(248) 809-6790<br>rcromerjr@thecromerlawgroup.com | KIENBAUM HARDY<br>VIVIANO PELTON & FORREST, P.L.C.<br>Thomas G. Kienbaum (P15945)<br>William B. Forrest III (P60311)<br>Attorneys for Defendants Dantonio, Hollis, and Simon<br>280 N. Old Woodward Ave., Ste. 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>tkienbaum@khvpf.com.com<br>wforrest@khvpf.com<br><br>RHOADES MCKEE, PC<br>Bruce Neckers (P18198)<br>Paul McCarthy (P47212)<br>Attorneys for Defendants Davis and Miller<br>55 Campau Ave, NW, Ste. 300<br>Grand Rapids, MI  49503<br>(616) 233-5133<br>bneckers@rhoadesmckee.com<br>mccarthy@rhoadesmckee.com |

---

**Brief in Support of Joint Motion for Entry of Judgment Against Attorneys Warnicke and Paterson, and for Entry of Order Suspending Them From Practice in This Court**

**Discussion**

Attorneys Warnicke and Paterson continue to flout this Court's orders, in violation of their obligations as officers of this Court and their ethical duties to the profession. After begging this Court for a payment plan—and receiving that relief—contemnor Warnicke failed to make the first Court-ordered payment on December 1, 2020, and has paid nothing since. His co-contemnor Paterson has likewise paid nothing. They have refused to pay despite this Court's order that a daily $100 coercive sanction retroactive to August 12, 2020 would be applied—an amount that is already up to $15,200 as of the date of this motion.

In its earlier contempt order, this Court recognized that it had the power to incarcerate the contemnors, and/or to suspend their ability to practice in the Western District of Michigan. This Court believed that the coercive monetary sanction would be sufficient. Regrettably, it was not. Defendants thus ask this Court to take the next step and suspend Warnicke and Paterson's right to practice in this District (but do not ask for incarceration). And, because Warnicke and Paterson should not be allowed to simply disregard the Court's monetary sanctions without consequence, the Court should exercise its authority to reduce the monetary sanction accrued to date, and thereafter accruing, to a money judgment, so that the Defendants may take steps to enforce the award directly.

While Warnicke and Paterson have appealed this Court's contempt finding,[1] it is hornbook law that the "taking of an appeal does not by itself suspend the operation or execution of a district-court judgment or order during the pendency of the appeal." 16A Wright, Miller, et al., Federal Practice & Procedure § 3954 (5th ed.); *see generally Ohio State Conference of N.A.A.C.P. v.*

---

[1] There is a serious question whether this Court's contempt order is appealable at this point. See *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 926 F.3d 534, 538 (9th Cir. 2019).

*Husted*, 769 F.3d 385, 387 (6th Cir. 2014); *Bout v. Bolden*, 21 F. App'x 327, 329 (6th Cir. 2001) (discussing stay of sanctions order pending appeal); *Aldridge v. City of Warren*, 2016 WL 9045623, at *1 (E.D. Mich. May 31, 2016) (same, against plaintiff's counsel sanctioned for misconduct).[2]

### I. This Court should convert Contemnors' accrued financial liabilities to a money judgment and suspend their right to practice law in this District.

A court's equitable contempt power is "extremely broad and flexible," *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013), and is limited only "by the requirements of full remedial relief," *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193–94 (1949). Indeed, "[a]ll the inherent equitable powers of the District Court are available," *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946), and "[t]he power to shape the appropriate remedy . . . lies squarely within the discretion of the district court," *Paterek v. Vill. of Armada*, 801 F.3d 630, 644-45 (6th Cir. 2015). Because this Court's initial exercise of its contempt power has proven ineffective, this Court should bring to bear two additional contempt powers: (a) the authority to convert its sanctions order to a money judgment to enable Defendants to begin the collection process and (b) the authority to suspend Paterson and Warnicke's right to practice law in this District.

### A. The Court should reduce the sanctions award and the coercive penalty sanctions accrued as of January 11, 2021—at this point totaling $ 67,210—to a monetary judgment so that the Defendants may take efforts to collect.

The authority to convert a contempt order to a money judgment, though rarely invoked given the usual efficacy of traditional contempt measures like daily coercive fines and

---

[2]Further, it is well-established that an interlocutory appeal does not divest a district court of jurisdiction, except as to "those aspects of the case involved in the appeal." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985). The appeal involves only whether Warnicke and Paterson acted in contempt of the July 2020 order—not their failure to comply with a subsequent order, the enforcement of which has not been stayed.

2

incarceration, is a recognized aspect of federal courts' civil contempt power. *See F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013) ("[T]he Supreme Court and at least one court of appeals have acknowledged that a court can issue a money judgment as a remedy for civil contempt.") (citing *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220 (1945) and *In re Prof'l Air Traffic Controllers Org.,* 699 F.2d 539, 542 (D.C. Cir. 1983)).

In *Piambino v. Bestline Products, Inc.*, for example, the court observed that, although a "contempt proceeding vindicates the Court's authority, . . . it does not settle or compromise the beneficiary of this sanction from pursuing execution of the award by civil process." 645 F. Supp 1210, 1217 (S.D. Fla. 1986) (citing *Byrd Coal Co., Inc.*, 83 F.2d 256 (2d. Cir. 1936)). Consequently, the court said, "of course" a plaintiff "may attempt to execute a valid judgment entered by the Court for the remainder due." *Id*. And more recently, in *Leshin*, the Eleventh Circuit affirmed the authority of the district court to convert a contempt order to a money judgment, and did so on facts nearly identical to this case. 719 F.3d at 1231. There, the defendants found themselves in contempt for failing to comply with the terms of a stipulated injunction. *Id*. at 1229. The Court imposed a contempt sanction, which the defendants refused to pay. *Id*. After an additional contempt sanction failed to persuade the defendants to voluntarily pay, the plaintiff successfully moved to convert the sanctions order into a money judgment. *Id*. at 1230.

On appeal, the Court of Appeals rejected the defendants' argument that the district court lacked authority to convert its contempt sanctions order to a money judgment. *Id*. at 1231. Noting that civil contempt is an "area where the district court has extremely broad and flexible powers" and "wide discretion in fashioning an equitable remedy for [a party's] civil contempt," the Court was "at a loss to see why the district court lacked the power to grant both the equitable remedy

3

[contempt] *and* the legal one [a money judgment] so long as it did not permit double recovery" – something that converting the sanctions order to a money judgment would not do. *Id.* at 1231–33.[3]

*Leshin* is squarely on point. As with the contemnors in that case, Warnicke and Paterson have refused to follow a specific, unambiguous order from this Court—and additional coercive sanctions have not been effective to compel compliance with the order. As the parties entitled to the sanctions award, Defendants—like the moving party in Leshin—now ask this Court to increase the coercive effect of its contempt sanction by converting the accrued liabilities to a money judgment, enabling them to begin the collection process.

It is true that, at an earlier stage in these proceedings, this Court denied defendants' request for a writ of execution under Rule 69 and 71 because contempt proceedings, rather than a writ of execution, was the proper vehicle for enforcing compliance with a monetary sanctions order. ECF No. 384, PageID.6453, citing *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 802 (6th Cir. 2017).). But this request is different. Defendants agree that civil contempt was the appropriate first step in persuading Paterson and Warnicke to comply with the Court's sanctions order. But that initial measure has proven ineffective. As a next step (one supported by ample authority cited above), this Court should convert the contempt order to a money judgment to allow Defendants to begin the collection process and capture whatever funds Paterson and Warnicke have left after a months-long opportunity to divert or deplete funds otherwise payable to Defendants.

---

[3]Other examples of courts granting this relief can be found in *Parker v. United States*, 153 F.2d 66, 71 (1st Cir. 1946) (stating that a "petition for attachment for contempt was filed by the United States" as plaintiff); *In re Grand Jury Subpoena No. 7409*, 2019 WL 2168874, at *4 (D.D.C. Jan. 24, 2019) (observing that the contemnor's adversary could "convert the sanctions that have accrued under the Contempt Order into a sum certain judgment and obtain an order permitting action against [the contemnor's] property"); and *Jacobson v. Petterson*, 2007 WL 1463055, at *3 (W.D. Wash. May 17, 2007) (converting all prior sanctions to judgment;

4

Likewise, the fact that Paterson and Warnicke's sanctions tab is still running does not prevent this Court from converting the accrued portion of their liability to a money judgment. The Court has the authority to enter an interim judgment for the portion accrued to date. *See Agudas Chasidei Chabad of United States v. Russian Fed'n*, 128 F. Supp. 3d 242, 249 (D.D.C. 2015) (granting motion for interim money judgment on contempt sanctions that were still in effect and entering judgment against the defendants in the amount of the sanctions accrued through the date of the motion hearing); *CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, 2013 WL 324061, at *3 (S.D.N.Y. Jan. 24, 2013) (imposing daily contempt sanctions and authorizing the petitioner to "enter judgment in favor of the Clerk of the Court from time to time for the accrued amounts of such fines and enforce such judgment on behalf of the Court").

Defendants therefore request that the Court modify its sanctions order comprising the $52,010 in sanctions and the $15,200 in daily coercive fines incurred to date—$ 67,210 in total—to a money judgment to enable Defendants to begin the collection process, to be increased as additional sanctions accrue, and permitting Defendants to apply for an award of fees incurred in connection with any reasonable collection efforts undertaken.

> **B.   This Court should suspend Paterson and Warnicke's right to practice law in this District until they have purged themselves of contempt.**

The Court has already acknowledged that its "local rules also explicitly permit limitations on attorney practice under the contempt power, permitting disbarment from the Court 'as a sanction for contempt of court' under specified procedures, but otherwise not 'limit[ing] the court's power to punish contempt.'" ECF No. 384, PageID.6451 (citing W.D. Mich. LGenR 2.3(e)); *accord Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 168 (7th Cir. 1997) (recognizing a district court's authority to suspend an attorney-contemnor's right to practice in the court, as "a member of the bar has a special obligation to abide by judicial orders"). Given that Warnicke and

5

Paterson have not abided by the Court's present contempt order, responded to coercive sanctions, suspension of their right to practice is an appropriate additional step for compliance with the Court's orders. Thus, in addition to the daily coercive fines, both Warnicke and Paterson should be suspended from practice in this District until the full amount of the sanctions order (including accrued penalties) are paid.[4] No more payment plans should be permitted—Warnicke asked for that relief, was given that relief, and thumbed his nose at the Court all the same.

### Conclusion

Each day Warnicke and Paterson continue to practice in this Court and retain money rightfully awarded to Defendants is another day they flout this Court's authority. In light of their persistent refusal to comply with this Court's sanctions orders, Defendants ask this Court to convert its sanctions order to a money judgment to enable Defendants to begin the collection process and suspend Paterson and Warnicke's right to practice law in this District.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: /s/*Thomas G. Kienbaum*
    Thomas G. Kienbaum (P15945)
    William B. Forrest III (P60311)
Attorneys for Defendants Dantonio,
Hollis, and Simon
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
tkienbaum@khvpf.com

Dated:  January 12, 2021      wforrest@khvpf.com

---

[4] Paterson is attorney of record in three cases pending in this District: *Davis v. Benson et al*, 20-cv-768-JTN-PJG, *Davis et al v. Benson et al*, 20-cv-00915-PLM-RSK, and *Davis et al v. Benson et al*, 20-cv-00981-PLM-RSK. Warnicke does not appear to be currently litigating in this Court, but is free to do so in the absence of an order suspending his right to practice in this District.

6

<table>
<tr><td></td><td>RHOADES MCKEE, PC<br><br>By:/s/*Paul McCarthy* (signed with permission)<br>Bruce Neckers (P18198)<br>Paul McCarthy (P47212)<br>Attorneys for Defendants Davis and Miller<br>55 Campau Ave, NW, Ste. 300<br>Grand Rapids, MI 49503<br>(616) 233-5133<br>bneckers@rhoadesmckee.com</td></tr>
<tr><td>Dated: January 12, 2021</td><td>mccarthy@rhoadesmckee.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

    I hereby certify that on January 12, 2021, the foregoing document and this Certificate of Service were served upon all counsel of record in this matter, via the Court's electronic filing system, and by email and U.S. Mail upon Thomas Warnicke, 535 Griswold Street, Suite 2632, Detroit, MI  48226 (tom@warnickelaw.com), and Andrew Paterson, 2893 E. Eisenhower Pkwy, Ann Arbor, MI 48108 (aap43@hotmail.com). I declare the above statements to be true to the best of my information, knowledge, and belief.

                                      */s/ Thomas G. Kienbaum*
                                      Thomas G. Kienbaum (P15945)
                                      Kienbaum Hardy Viviano
                                       Pelton & Forrest, P.L.C.
                                      280 North Old Woodward Ave., Ste. 400
                                      Birmingham, Michigan 48009
                                      (248) 645-0000
                                      tkienbaum@khvpf.com

399792