EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS E. BLACKWELL, II,

    Plaintiff,

v.

LOU ANNA K. SIMON, in her individual capacity as president of Michigan State University, MARK DANTONIO, in his individual capacity as Head Football Coach of Michigan State University, MARK HOLLIS, in his individual capacity as Director of Intercollegiate Athletics for Michigan State University, DETECTIVE CHAD DAVIS, in his individual capacity as a detective for the Michigan State University Police Department, and DETECTIVE SAM MILLER, in his individual capacity as a detective for the Michigan State University Police Department,

    Defendants.

Case No: 18-cv-01261

Hon. Janet T. Neff

Magistrate Judge Sally J. Berens

---

| | |
|---|---|
| THE CROMER LAW GROUP PLLC<br>Ronnie E. Cromer, Jr. (P59418)<br>Attorney for Plaintiff<br>24901 Northwestern Highway, Suite 612<br>Southfield, MI  48075<br>(248) 809-6790<br>rcromerjr@thecromerlawgroup.com | KIENBAUM HARDY<br>VIVIANO PELTON & FORREST, P.L.C.<br>Thomas G. Kienbaum (P15945)<br>William B. Forrest III (P60311)<br>Attorneys for Defendants Dantonio, Hollis, and Simon<br>280 N. Old Woodward Ave., Ste. 400<br>Birmingham, MI 48009<br>(248) 645-0000<br>tkienbaum@khvpf.com.com<br>wforrest@khvpf.com<br><br>RHOADES MCKEE, PC<br>Bruce Neckers (P18198)<br>Paul McCarthy (P47212)<br>Attorneys for Defendants Davis and Miller<br>55 Campau Ave, NW, Ste. 300<br>Grand Rapids, MI 49503<br>(616) 233-5133<br>bneckers@rhoadesmckee.com<br>mccarthy@rhoadesmckee.com |

---

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR JOINT MOTION FOR ENTRY OF JUDGMENT AGAINST ATORNEYS WARNICKE AND PATERSON, AND FOR ENTRY OF ORDER SUSPENDING THEM FROM PRACTICE IN THIS COURT**

# INTRODUCTION

The Contemnors give no good reason to deny Defendants' requests to convert their contempt order to a money judgment and to suspend them from practicing in this District until they comply with this Court's order. They offer a poorly developed jurisdictional argument that is undermined by the very precedent they cite. And they rely on tired assertions of poverty that are too little too late (as this Court has held) and, in any event, happen to *favor* the relief Defendants currently seek. This Court should grant Defendants' motion.

# ARGUMENT

I. **Even after Warnicke's and Paterson's responses, this Court has every reason to reduce the contempt order to a money judgment, and no reason not to.**

Warnicke and Paterson do not dispute that district courts have the legal authority to convert a contempt order into a money judgment.[1] They argue instead that this Court has no jurisdiction to exercise that authority while their appeal is pending. And even if it does, they say, equitable considerations like their inability to pay should still dissuade this Court from exercising that power here. Defendants will take each contention in turn.

A. **This Court has jurisdiction to grant Defendants' motion.**

Paterson is the main proponent of the argument that this Court lacks jurisdiction to grant Defendants' motion. He spends much time discussing appellate jurisdiction, presumably on the theory that the existence of appellate jurisdiction necessarily implies the non-existence of trial-court jurisdiction. (Paterson Resp., ECF No. 395, PageID.6517–19.) But the law does not endorse

---

[1] Warnicke says that it is "noteworthy" there is no Sixth Circuit decision addressing this issue. (Warnicke Resp., ECF No. 397, PageID.6531.) What is "noteworthy" is that neither Warnicke nor Paterson could unearth a single case contradicting the authority cited by Defendants. That there is no Sixth Circuit decision on this issue speaks to the usual efficacy of contempt sanctions and the rare virulence of Warnicke and Paterson's conduct.

Paterson's binary take on jurisdiction. Even if the Sixth Circuit has appellate jurisdiction—something Defendants do not concede[2]—this Court still has jurisdiction to do two things: (1) to enforce its judgment and (2) adjudicate matters unrelated to the issues on appeal. *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013) (cited in Paterson Resp., ECF No. 395, PageID.6519.); *see also Amalgamated Transit Union v Interurban Transit Pship*, No. 15-cv-855, 2015 WL 8491493, at *3 (WD Mich, December 10, 2015) (Neff, J.). Both jurisdictional bases apply here.

As for the first basis, district courts "retain jurisdiction to enforce the[ir] judgment[s]," so long as they "do not alter or enlarge the scope" of the judgments. *City of Cookeville, Tenn. V. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007) (noting that there is a "crucial distinction between *expansion* and *enforcement* of judgments."). That is precisely what Defendants' motion asks this Court to do: *enforce* its contempt sanctions order by converting it to a money judgment so that Defendants may begin the collection process.[3]

Paterson hardly says otherwise. He baldly asserts that this Court is "divested of jurisdiction to alter or convert the contempt order." (Paterson Resp., ECF No. 395, PageID.6520.) But he does not explain how converting the contempt order to a money judgment "alter[s] or enlarge[s] the scope" of that order. *Cf. Cookeville*, 484 F.3d at 394. That is because it does not. This Court's October 30th contempt order required Paterson and Warnicke to pay $52,010 and increased that

---

[2] (*See* Defs' Mot., ECF 390, PageID.6497 (citing *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 926 F.3d 534, 538 (9th Cir. 2019).)

[3] Moreover, Paterson's jurisdictional argument overlooks that this Court can, as requested, also convert its earlier July 29, 2020 order without any jurisdictional concerns because it is beyond dispute that the Sixth Circuit lacks jurisdiction over that order. *Compare Burley v. Gagacki*, 834 F.3d 606, 620 (6th Cir. 2016) ("[I]f an appellant "chooses to designate specific determinations in his notice of appeal[,] . . . only the specified issues may be raised on appeal."), *with* Notices of Appeal, ECF Nos. 385, 386, PageID.6455–57, 6470–71 (designating only the October 30, 2020 contempt order as the order being appealed).

2

amount by $100 a day going forward if Warnicke failed to make an initial payment by December 1, 2020. (Order, ECF No. 384, PageID.6451–52.) Defendants' motion is not asking for any additional monetary relief, nor does it require this Court to articulate new legal bases for its original decision. *Cf. Cookeville*, 484 F3d at 394 (holding that the district court lacked post-appeal jurisdiction to issue injunction that "decided two legal issues that it had not decided previously[ ] and expanded significantly the scope of its previous order on appeal"). Defendants are simply asking this Court to convert the form of that order so that, like any other successful litigant, they can begin the collection process on that money judgment—which, it is important to note, Paterson and Warnicke have not asked this Court or the Court of Appeals to stay—while Warnicke and Paterson appeal.

Warnicke, it is important to point out, has not argued that this Court lacks jurisdiction to entertain Defendants' request. In fact, Warnicke's cursory (and procedurally improper) request for a stay necessarily acknowledges his (and thus Paterson's) continuing obligation to pay. (*See* Warnicke Resp., ECF No. 397, PageID.6531.) With the continuing obligation to pay comes the continuing judicial authority to enforce that obligation. Defendants are merely asking this Court to exercise that authority by converting the contempt sanctions order to money judgment so that they, like any other successful litigant, can execute on that judgment.

Nor will this relief affect, or be affected by, the resolution of issues on appeal—the second jurisdictional basis here. Paterson suggests that this Court lacks jurisdiction because a favorable appellate decision could undo the requested relief. (Paterson Resp., ECF No. 395, PageID.6523.) But the Sixth Circuit rejected that line of reasoning in *Williamson*, the case Paterson cites. (*See* Paterson Resp., ECF No. 395, PageID.6519.) There, the Court wrote that, even though an "appeal may negate the plaintiff's entitlement to a remedy by disproving their cause of action, the

plaintiff's efforts to ensure that a remedy may still be had if they prevail on appeal does not affect the merits of the defendants' appellate argument against the cause of action." *Williamson*, 731 F.3d at 627. Put differently, even though Paterson and Warnicke challenge the validity of the order underlying Defendants' motion, "[Defendants'] efforts to ensure that a remedy may still be had if they prevail on appeal does not affect the merits of [Paterson and Warnicke's] appellate argument." *Id*.

### B. Warnicke's and Paterson's pleas of poverty should fall on deaf ears.

As a fallback to the jurisdictional argument, Paterson—joined by Warnicke—resort to equity, claiming that they are, and have always been, unable to pay their sanctions.[4] (Paterson Resp., ECF No. 395, PageID6515; Warnicke Resp., ECF No. 397, PageID.6531.)

This argument is too little, too late. It is too late because, as this Court has already found, the time for pleading poverty has long passed. (Order, ECF No. 384, PageID.6450.) It is too little because they continue to baldly assert poverty without submitting actual evidence. (*See id*.) For example, Warnicke asserts that "during the pandemic that began in March of 2020, income during 2020 was accordingly affected upon Warnicke in a significantly manner." (Warnicke Resp., ECF No. 397, PageID.6531.) Such confoundingly ambiguous statements in a brief are no substitute for actual evidence showing, one, that he cannot pay, two, that his inability was not self-induced, and three, that he took all reasonable steps to comply. (*Cf*. Order, ECF No. 384, PageID.6450.) The

---

[4] Paterson also notes, as Defendants did in their opening brief, that this Court denied a different request to allow Defendants to execute on Paterson and Warnicke's initial sanctions award. But Defendants have explained why that earlier decision does not foreclose their current request, which pertains to a different order (its contempt order) and seeks different relief (conversion of that order to a money judgment). Paterson has not. (See Paterson Resp., ECF No. 395, PageID.6521 (block quoting this Court's earlier opinion without responding to Defendants' new argument); *see also id*. at PageID.6523 (purporting to incorporate by reference this Court's earlier decision).)

4

same goes for Paterson and the self-serving declaration that he filed months ago, which this Court found did "not remotely satisf[y] th[e] onus of proof." (*Id.*)

Their argument is also a double-edged sword. After all, Defendants' request to convert the contempt order to a money judgment is the first step in the collections process. And that process will include creditor's examination and other discovery, something both Paterson and Warnicke have insisted will prove their pleas of poverty. (Paterson Resp., ECF No. 395, PageID6524; Warnicke Resp., ECF No. 397, PageID.6531.) Thus, if those pleas are genuine, Paterson and Warnicke should *welcome* Defendants' request for relief, not resist it.

## II. This Court should suspend Warnicke and Paterson from practicing in the Western District.

Paterson and Warnicke's claims of financial inability also run through their response to Defendants' request that this Court suspend them from practicing until they satisfy their sanctions obligations. Again, those pleas should fall on deaf ears. Both men had a full chance to argue and factually prove that they did not willfully violate this Court's July 29, 2020 order. They wasted that chance, and thus this Court found that they willfully violated this Court's order. Nothing has changed since then, including the fact that neither Paterson nor Warnicke have paid a cent toward their sanctions tab. Their continued, unrepentant disobedience of this Court's sanctioning authority demands a proportionate response.

Finally, at various points in his response, Paterson seems to suggest, one, that this Court's October 30th order relieved him of any continuing obligation to pay and, two, that Defendants' motion asks this Court to punish Paterson for Warnicke's failure to pay on December 1, 2020. (Paterson Resp., ECF No. 395, PageID.6524.) He is wrong on both fronts. This Court's October 30th order did not relieve Paterson of any obligation to pay the sanctions; in fact, it did just the opposite. It held him in contempt believing that the coercive pressure would *motivate* payment by

5

Paterson. (Order, ECF No. 384, PageID.6453 (trusting "that the contempt proceeding is the proper means for accomplishing enforcement").) Sadly, it did not. And that fact alone—not Warnicke's separate failure to comply with his court-ordered obligations—prompted Defendants current motion as it pertains to Paterson.

## CONCLUSION

Defendants ask this Court to convert its sanctions order to a money judgment to enable Defendants to begin the collection process and suspend Paterson and Warnicke's right to practice law in this District until they comply with this Court's sanctions order.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.

By: /s/   Thomas G. Kienbaum
Thomas G. Kienbaum (P15945)
  William B. Forrest III (P60311)
Attorneys for Defendants Dantonio,
Hollis, and Simon
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-000
tkienbaum@khvpf.com
wforrest@khvpf.com

Dated:  February 16, 2021
403348

RHOADES MCKEE, PC

By: /s/  Paul McCarthy (with permission)
Bruce Neckers (P18198)
Paul McCarthy (P47212)
Attorneys for Defendants Davis and Miller
55 Campau Ave, NW, Ste. 300
Grand Rapids, MI 49503
(616) 233-5133
bneckers@rhoadesmckee.com
mccarthy@rhoadesmckee.com

Dated: February 16, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, the foregoing document and this Certificate of Service were served upon all counsel of record in this matter, via the Court's electronic filing system, and by email and U.S. Mail upon Thomas Warnicke, 535 Griswold Street, Suite 2632, Detroit, MI 48226 (tom@warnickelaw.com), and Andrew Paterson, 2893 E. Eisenhower Pkwy, Ann Arbor, MI 48108 (aap43@hotmail.com). I declare the above statements to be true to the best of my information, knowledge, and belief.

*/s/ Thomas G. Kienbaum*
Thomas G. Kienbaum (P15945)
Kienbaum Hardy Viviano
Pelton & Forrest, P.L.C.
280 North Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
tkienbaum@khvpf.com

403448